**Kenneth DYTON, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Jan. 16, 1969.

Victor F. Battaglia, of Biggs & Battaglia, Wilmington, for defendant below, appellant.

John P. Daley, Deputy Atty. Gen., for plaintiff below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice:

The appellant, Kenneth Dyton, was found guilty, after a non-jury trial in Superior Court, of illegally possessing a hypodermic needle and a narcotic drug. He has appealed from the sentences imposed therefor. His contentions are: (1) certain evidence should have been suppressed because it was seized as the result of an illegal search; and (2) the statute (16 Del.C. § 4716) making possession of a hypodermic needle illegal is unconstitutional.

Pursuant to a search warrant, four police officers went to the apartment of one Jones, who was a co-defendant in the case below. When they entered the apartment, Jones and the appellant were present. While the search warrant was being read to them, one officer saw appellant remove a small package from his pocket and push it between the cushions of the sofa on which he was sitting. The officer took the packet and found that it contained heroin. The officers thereupon searched the appellant and found a package in his pocket containing a hypodermic needle, an eyedropper, and certain miscellaneous items, all of which constituted a "homemade" device for injecting liquids into the body. The record contains no evidence that he had a prescription for a syringe or needle.

Two of the officers, Smith and Maloney, testified at the trial. The appellant contradicted their testimony in certain respects, but the trial Judge obviously ac-

cepted the testimony of the officers. According to it, the apartment door was slightly ajar when the police arrived. Smith knocked on the door, and announced their identity and purpose. His knock caused the door to swing open somewhat further, enabling him to see the two occupants seated therein. Neither of them arose or answered the knock. After waiting about twenty seconds, the police walked into the apartment.

## I

Appellant's first contention is that the entry was improper in that the "knock and announce" rule was not adequately complied with. The Court below held to the contrary.

As early as 1604, the common law required an officer, in executing a warrant, to "signify the cause of his coming, and to make a request to open the doors" before forcefully entering a house. Semayne's case, 5 Coke Rep. 91, 77 Eng.Rep. 194. This rule was recognized in Delaware in State v. Oliver, 2 Houst. 585 (1855). We have no statute specifically dealing with the subject; the common law rule is accordingly applicable. The general rule is subject to some exceptions. Cf. Patrick v. State, Del., 227 A.2d 486. There are cases which hold that one type of exception exists where the purpose of such warrant would be frustrated by a delay in entering. See Henson v. State, 236 Md. 518, 204 A.2d 516. Cf. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726.

We see no need in this case, however, to concern ourselves with any rule of exigency; in our opinion, the evidence justifies the trial Judge's finding of reasonableness in this case. We think the police waited an adequate length of time before entering after knocking and announcing, especially in the light of the fact that the occupants were in plain sight of the officers and made no move to answer the door during that period. Our holding is not a rejection of anything said in Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828; we hold only that the action of the officers under all the circumstances meets the demands of the *Sabbath* opinion. We find no merit in this ground of appeal.

## II

16 Del.C. § 4716 reads as follows:

"(a) No person shall sell at retail or furnish to any person other than a duly licensed physician, dentist or veterinary surgeon, an instrument commonly known as a hypodermic syringe or an instrument commonly known as a hypodermic needle, or any instrument adapted for the use of narcotic drugs by subcutaneous injection, without a written order of a duly licensed physician, dentist, or veterinary surgeon.

"(b) Every person who disposes of or sells at retail, or furnishes or gives away to any person the instruments described in subsection (a) of this section, upon the written order of a duly licensed physician, dentist or veterinary surgeon, shall before delivering the same, enter in a book kept for that purpose the day of the sale, the name, age and address of the purchaser, and a description of the instrument sold, disposed of, furnished or given away.

"(c) No person, except a licensed pharmacist, licensed druggist, licensed physician, licensed dentist, licensed veterinary surgeon, hospital or regular dealer in medical or surgical supplies, shall possess an instrument described in subsection (a) of this section, without having in his possession a certificate from a physician certifying that the possession of such instrument is necessary for the treatment of injury, deformity or disease then suffered by the person possessing the same, or if possessed by a nurse, a certificate from a duly licensed physi-

cian that such possession is for professional purposes.

"(d) Any person who sells, disposes of, or gives away any instrument commonly known as a hypodermic syringe, or an instrument commonly known as a hypodermic needle, or any instrument adapted for the use of narcotic drugs by subcutaneous injection, except in the manner prescribed in this section, shall be guilty of a misdemeanor."

This provision was originally enacted in Delaware in 1935 as a part of the Uniform Narcotic Drug Act, 40 L. of D. Ch. 225; it was not contained in the Uniform Act as prepared by the National Conference and we have found no provision precisely like it in any other jurisdiction.

■ In contending that 16 Del.C. § 4716 is unconstitutional, appellant argues that the true result of the section, by making illegal the possession of a hypodermic syringe or needle without a prescription, is to establish an irrebuttable presumption of wrongful purpose which runs contrary to human experience. This theory was adopted in the Louisiana case of State v. Birdsell, 235 La. 396, 104 So.2d 148, but rejected by the highest Court of New York in People v. Bellfield, 11 N.Y.2d 947, 228 N.Y.S.2d 830, 183 N.E.2d 230. Both the Louisiana and New York statutes were somewhat similar to ours although, strangely, Louisiana had no provision forbidding the sale of these articles without a prescription. In any event, we agree with the *Bellfield* decision, *supra*.

In our opinion, the requirements of the Delaware statute, as applied to a case like the present one, come well within the police power of the State. The grave consequences of the illicit use of narcotic drugs are too well known to require discussion here. Within reasonable bounds, it is a legislative function to determine appropriate methods for fighting a menace of this nature. Clearly, possession of a syringe or needle facilitates the use of narcotics, and restrictions upon such possession are obviously helpful in controlling the illegal drug traffic. The present statute does not completely forbid the possession of syringes and needles; it requires that the possessor have a certificate of a doctor to show the need for such possession. Thus the only inconvenience caused an innocent possessor is indeed slight.

We agree that there could be cases arising under the Act, if it be literally applied, which could create difficulties. We mention one example of several that could be pointed out: a person is permitted under the first paragraph to buy a syringe or needle upon the prescription of a dentist or veterinarian; yet, under the third paragraph, such a prescription apparently does not render the possession legal—an anomaly which could conceivably cause considerable concern in the poultry industry in this State. We suggest the need for legislative re-examination of the statute. The existence of possible problems affords this appellant no ground for relief, however, because he has not shown himself to be within any class of persons adversely affected thereby, nor has he even attempted to do so. Aprile v. State, 1 Storey 364, 146 A.2d 180. At the trial, he admitted possession of the needle and the other objects and made no offer to show any justifiable reason for such possession. Furthermore, he admitted that he was an addict customarily using heroin daily; that fact combined with the make-shift nature of the home-made syringe renders incredible any idea that his possession was innocent. He is in no position to question the constitutionality of this statute for any of the reasons he has advanced.

The judgment below will be affirmed.