**STATE of Delaware, Plaintiff,**

v.

**George Lee WILSON et al., Defendants.**

Superior Court of Delaware, New Castle.

June 5, 1973.

Jerome O. Herlihy, Chief Deputy Atty. Gen., Wilmington, for plaintiff.

James A. Erisman, Wilmington, for defendants George Lee Wilson and Buster Edgar Sweet.

Arlen B. Mekler, Public Defender, Wilmington, for defendants Willard Freeman, Kathleen Donahoe, Joann Jenkins and Bernice Marsh.

Martin A. Schagrin, Wilmington, for defendant John E. Williams.

## OPINION

BUSH, Judge.

The defendants have been charged with various violations of the State drug laws. Motions to suppress the contents of intercepted telephone communications and all evidence resulting therefrom have been filed on behalf of all of the defendants in the several cases. The wiretap involved was conducted by members of the Wilmington, New Castle County and Delaware State Police Departments, pursuant to an order of a Superior Court judge issued on August 1, 1972. The telephone involved in all the motions was located at 203 Concord Avenue, Wilmington, Delaware, and was listed in the name of George Lee Wilson. Defendant Wilson was the only individual specifically named, but the cases against certain of the defendants are based on evidence obtained against them as a result of the wiretap authorized against Wilson. For purposes of ruling on the motions, the cases shall be treated as one. The necessary factual background will be set forth when pertinent to the resolution of a given issue.

Broadly stated, defendants raise two issues: (1) whether 11 Del.C. § 757, The Delaware Wiretapping and Electronic Surveillance Act, violates on its face the First,

Fourth, and Fifth Amendments to the Constitution of the United States and Article 1, Section 6 of the Constitution of the State of Delaware, Del.C.Ann.; and (2) whether 11 Del.C. § 757, as applied in the present instance, violates the Fourth Amendment.

■ Defendants' first argument is that wiretapping is intrinsically violative of the First Amendment since fear of electronic surveillance inhibits the exercise of the rights guaranteed thereby.

This Court does not feel that fear of surveillance of communications, when that surveillance is circumscribed under Fourth Amendment standards, amounts to a denial of free speech under the First Amendment. This Court finds 11 Del.C. § 757 not violative of First Amendment rights. See United States v. Escardar, 319 F. Supp. 295, 302 (S.D.Fla.1970); State v. Siegel, 13 Md.App. 444, 285 A.2d 671, 677 (1971) aff'd 266 Md. 256, 292 A.2d 86 (1972).

Defendants also contend that 11 Del.C. § 757 violates the Fifth Amendment since it allows incriminating testimonial statements obtained through wiretaps to be used as evidence against an individual contrary to his will.

■ The Supreme Court has treated statements seized by means of electronic surveillance as a search subject to the requirements of the Fourth Amendment. Therefore, the provisions of 11 Del.C. § 757 relate to searches and seizures, and must satisfy the requirements of the Fourth Amendment. Since this Court holds, as will be discussed below, that 11 Del.C. § 757 meets these requirements, it cannot be validly maintained that the Statute's provisions violate the privilege against self-incrimination. Such a reading would render the Fourth Amendment protections as set out in Berger v. State of New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967) a redundancy. Therefore, this Court holds that 11 Del.C. § 757

does not violate the Fifth Amendment. See United States v. Escardar, 319 F.Supp. 295, 302 (S.D.Fla.1970); United States v. Cafero, 473 F.2d 489 (3rd Cir. 1973).

Defendants' broadest attack on the constitutionality of 11 Del.C. § 757 is based on the Fourth Amendment and Article 1, Section 6 of the Delaware Constitution. It is argued that 11 Del.C. § 757 violates the Fourth Amendment both facially and as applied in the present case. The arguments as to facial invalidity will be considered first.

■ Defendants initially contend that the Fourth Amendment precludes "any" electronic surveillance since wiretapping is inherently violative of the right to privacy. This Court refuses to so hold since such a contention was rejected in Berger, supra, 388 U.S. at 49–53, 87 S.Ct. 1873.

■ Defendants next contend that the duration and continuous nature of the search permitted by 11 Del.C. § 757 results in its unconstitutionality. Specifically, it is argued that the statute is not precise nor carefully circumscribed and permits interception for up to a thirty-day period with one showing of probable cause. Therefore, it is said that the statute presents the constitutional objection to lengthy surveillance expressed in Berger.

This Court finds the arguments unpersuasive. The Statute's intrusion is precisely confined. Section 757(h)(3) requires that each application must contain

"A particular statement of the facts . . . including:

.   .   .   .   .   .

(b) The details as to the particular offense . . .

(c) The particular type of communication to be intercepted;

(d) The nature and location of the particular wire communication facilities involved on the particular place where the oral communication is to be intercepted;

.   .   .   .   .   ."

Further, an order may issue only if the Court, upon consideration of the application, is able to make the specific findings required by 11 Del.C. § 757(i). Finally, the order itself must conform with the requirements of 11 Del.C. § 757(k). In short, this Court believes that 11 Del.C. § 757 is as precise and limited as are the requirements of *Berger* and *Katz*.

■ In regard to the argument that the statute is unconstitutional because it allows a thirty-day continuous search with one showing of probable cause, it must be noted that the thirty-day period is a statutory maximum. The specific life span of each order is determined by the particular facts of the case; and, therefore, may be much shorter than the thirty-day maximum. Moreover, each interception is subject to termination prior to the running of the full authorized life span since 11 Del.C. § 757(k) provides that the order may require progress reports to the issuing judge which can possibly result in the early termination of the surveillance. Finally, this Court interprets section 757(k)(6) as requiring automatic termination when the described communication has been first obtained unless the judge finds probable cause to justify continued surveillance. Support for this position is found in the language of section 757(h)(3)(e) which requires that where automatic termination is not desired upon first obtaining the described communication, the application must specifically set forth facts establishing probable cause to believe that additional communications of the same type will be received. Therefore, section 757(k)(6) requires automatic termination in all cases, even if no such statement is contained in the order, unless probable cause has been established to believe that additional communications of the same type will be received and the order includes a statement that the order will not automatically terminate.

The Statute's intrusion is within the limits of *Berger* since the requirements for obtaining an order are precise; the thirty-day period is a statutory "maximum"; the order is subject to judicial review at any time; and the order is subject to automatic termination.

■ Defendants also argue that the Statute allows too much discretion in the executing officers. This argument is closely related to the contention immediately above that 11 Del.C. § 757 permits continuous interceptions of the type held unconstitutional in *Berger*.

The conclusion in Berger, however, was based upon two grounds: (1) the duration of the warrant, and (2) the failure to confine the investigator's latitude with various safeguards. United States v. Cox, 462 F. 2d 1293, 1303 (8th Cir. 1972). Both of these shortcomings have been corrected in 11 Del.C. § 757.

As to the first ground, since this Court has found that automatic termination is mandatory (except in the limited instance where probable cause exists to believe that communications of the same type will be received and the order states that it shall not automatically terminate) the Statute allows considerably less discretion to the executing officer than that found to be unconstitutional in *Berger*. The Officer can no longer continue surveillance without effective judicial supervision since if the surveillance is improperly continued after the authorization has terminated such surveillance is unlawful and subject to suppression. 11 Del.C. § 757(t). As a result, this Court believes that the Delaware Statute has cured the first ground of unconstitutionality found in *Berger*.

Likewise, this Court also finds that 11 Del.C. § 757 is not subject to attack for allowing the executing officers too much discretion as to the type of information to be intercepted. The reason for this finding is that the statute requires, in both the application and the order, a particular description of the type of communication sought to be intercepted. 11 Del.C. §

757(h)(3)(c) and (k)(4). Further, section 757(t) provides for relief if:

" . . . (1) The communication was unlawfully intercepted;

(2) The order of authorization is insufficient on its face;

(3) The interception was not made in conformity with the order of authorization."

The Statute requires precision in describing the object of the interception and appropriate relief for abuse.

Thus, the Court rejects defendants' argument that 11 Del.C. § 757 allows too much discretion to the executing officers.

■ Defendants' final attack as to the facial unconstitutionality of 11 Del.C. § 757 is that the Delaware Statute is deficient in not requiring prompt notice after authorized surveillance has been completed to those people whose conversation has been intercepted.

11 Del.C. § 757(n) requires that an inventory shall be served "[w]ithin a reasonable time but not later than 90 days after the termination of the period of the order or of the extensions or renewals thereof, or the date of the denial of an order applied for under subsection (1)". The inventory shall include notice of (1) the entry or denial of an order, (2) the date of the entry or denial of the order, (3) the period of the authorized or disapproved interception, and (4) whether during the period wire or oral communications were or were not intercepted. Finally, the issuing court, upon motion, may make available such portions of the intercepted communications as the Court determines to be in the interest of justice. 11 Del.C. § 757(n).

■ This Court does not find this procedure to lack the degree of promptness required by the Constitution. The constitutional test for searches and seizures is the reasonableness of the government action, and post-search notice of interception

may properly relate only to the issue of reasonableness. See United States v. Cafero, 473 F.2d 489 (3rd Cir. 1973). Only unreasonable searches and seizures are unconstitutional. A statute which requires an inventory to be filed within "a reasonable time" cannot, without more, be said to offend the test.

Thus, this Court concludes that the authorization of electronic surveillance and interception of wire communications as authorized by 11 Del.C. § 757 violates none of the constitutional provisions raised by defendants.

Defendants, in the alternative, constitutionally attack 11 Del.C. § 757 as applied in the present case. Two arguments are presented: (1) the application failed to allege or show "whether or not other normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ" as required by 11 Del.C. § 757(h)(3)(f) and (2) the order failed to command the termination of surveillance upon the attainment of the authorized objective. Each argument will be taken up in turn.

The paramount objective of the investigation which centered around defendant Wilson was to uncover the nature, structure, and scope of any narcotics distribution network of which he was thought to be a key figure. It must be noted that the investigation was not directed at merely disclosing the culpability of Wilson. The affidavit of application clearly indicated that the government already had obtained evidence against Wilson prior to the application for the wiretap. The reason for the wiretap as set forth in paragraph 4 of the affidavit of application was to determine "dates, times, places, and manner in which illegal sales and distribution of the narcotic drugs will be delivered" and "[t]he prices that the above mentioned persons pay for the narcotic drugs (heroin) and the dates, times, places and manner of payment for said drugs." Moreover, the wire communi-

cations to be intercepted would be between Wilson and his co-conspirators in the alleged scheme to distribute the narcotic drug (heroin) and would concern "the identity, telephone numbers, places of residence, places of purchase, places of delivery and manner of delivery." The defendants' contention that the government failed to exhaust other normal investigative techniques must be considered in light of this purpose.

Defendants' first assertion that the affidavit of application showed on its face that normal investigative procedures had in fact succeeded since the government had enough to convict Wilson and possibly others is not persuasive. As mentioned above, the purpose of the investigation was not limited to disclosure of Wilson's culpability. The investigation's purpose was much broader, and it cannot be said that the normal investigative techniques had already succeeded in fulfilling the stated purpose.

Moreover, the averments in the affidavit of application clearly indicated that several techniques had been tried, failed, and had small potential for success in the future. Particularly significant were the following averments.

At page 5 of the Affidavit of Application it is averred that:

" . . . several purchases of heroin were made from George Lee Wilson by the informant at 203 Concord Avenue, Wilmington, Delaware, which resulted in the issuance of a Municipal Court search warrant. . . . A search of subject Wilson and his residence was negative . . . .".

At page 6 of the Affidavit of Application it is averred that:

" . . . The informant further stated that it would be impossible to get a undercover agent to purchase heroin directly from George Lee Wilson because if there is any doubt about who you are,

he'll ask you to either shoot up or snort heroin in front of him to prove that you are not a police officer."

At page 7 it is further averred that:

"Your affiants . . . have tried in the past to set up a surveillance on the residence of George Lee Wilson, but due to the heavy volume of traffic at all hours and due to the physical layout (predominately residential area) which allows no concealment possibilities, an effective surveillance is impossible."

At page 12 it is averred that:

" . . . Wilson told the informant that every time he thinks that police are getting close to one of the places where his heroin is being sold[.] He will telephone that place and tell the person/persons to move the heroin to another location."

Finally, at page 18 it is averred that:

"Investigative techniques other than interception of telephone communications do not appear likely to succeed in identifying the underlings responsible for the distribution of Wilson's cache of drugs. Toll call analysis will not reveal the substance and contents of telephone conversation within the state. Because of the nature of the neighborhood, an effective surveillance of 203 Concord Avenue, Wilmington, Delaware is not possible and if attempted, would severely jeopardize the success of this investigation as would interviews of persons suspected of having relevant knowledge of the illegal sale of heroin from the residence of George Lee Wilson. Because the interception of a wire communication is the only way in which the scope of George Lee Wilson's illegal drug activity into the sale of narcotic drugs (heroin) can fully be determined, and because interception will aid in identifying the individuals known as "Brother" and "Mary" and the other known persons related to the illegal activities, a special need exists to intercept wire communications on

telephone facility 656–0967 listed to George Lee Wilson at 203 Concord Avenue, Wilmington, Delaware."

■ Based on the information in the affidavits submitted to him, the issuing judge had ample justification under the circumstances to make the findings required by 11 Del.C. § 757(i). The law enforcement agents are not required to prove to an absolute certainty that normal investigative techniques will fail. They only have to show that they "reasonably appear unlikely to succeed if tried." 11 Del.C. § 757(h)(3)(f). This Court finds that the affiants fulfilled this requirement at the time of the filing of the affidavit of application. See United States v. Focarile, 340 F.Supp. 1033, 1042–1043 (D.Md.1972); United States v. Leta, 332 F.Supp. 1357, 1362–1363 (M.D.Pa.1971).

■ Defendants also assert that the application failed to show facts justifying the conclusion that wiretapping would reasonably be expected to provide the evidence which was sought. This Court finds that the application sets forth sufficient facts and circumstances to allow the issuing judge to find probable cause.

Defendants' last contention is that the order is defective because it fails to command the termination of surveillance "upon the attainment of the authorized objective". It is asserted that the Omnibus Crime Control and Safe Street Act of 1968, 18 U.S.C. §§ 2510–2520, mandates the inclusion of such a statement in the order; that the Omnibus Act imposes minimum standards upon states for the use of electronic surveillance; and that the present order fails to comply with this standard.

■ This Court does not agree. First, it is to be noted that Circuit Judge Aldisert in a recently filed opinion did not so construe the Omnibus Act. He found that the Federal Act required "automatic termination upon attainment of the objective of the authorization irrespective of whether a statement to this effect has been included by the authorizing judge". United States v. Cafero, 473 F.2d 489, 496 (3rd Cir. 1973). This Court has likewise interpreted the Delaware Act, 11 Del.C. § 757. Thus, the failure to include such a statement is not fatal since the authorization will automatically terminate upon first obtaining the described communication, even if such a statement is not contained in the order, *unless the judge finds probable cause to justify continued surveillance.*

■ In the present instance, however, the order stated, in accordance with 11 Del.C. § 757(k)(6), that the interception was not to terminate automatically when the described communication had been first obtained. Therefore, the decisive issue is whether the application contained sufficient facts and circumstances from which the issuing judge could find probable cause to justify continued surveillance.

This Court finds that such probable cause existed. The application contained sufficient averments of a continuous conspiracy in regard to the unlawful sale and distribution of narcotic drugs and of several previous telephone calls to known dealers. Such averments were sufficient to allow the issuing judge to infer that many such telephone conversations would occur in the future.

For the reasons set forth herein the Court is of the opinion that defendants' motion should be denied.

It is so ordered.