George L. WILSON, Appellant,
Defendant below,

v.

STATE of Delaware, Appellee,
Plaintiff below.

Supreme Court of Delaware.

Argued March 12, 1975.

Decided July 17, 1975.

Arlen B. Mekler, Asst. Public Defender, Wilmington, for defendant below, appellant.

George H. Seitz, III, State Prosecutor, and Jeffrey M. Weiner, Acting State Prosecutor, Wilmington, for plaintiff below, appellee.

Before HERRMANN, Chief Justice, DUFFY and McNEILLY, Justices.

HERRMANN, Chief Justice (for the majority of the Court):

The defendant seeks review of his conviction in the Superior Court on charges of possession of narcotic drugs with intent to sell (16 Del.C. § 4752); possession of a deadly firearm during the commission of a felony (11 Del.C. § 468A); and possession

of firearms by a person convicted of a felony (11 Del.C. § 468B). In general, defendant challenges the legality of a telephone wiretap; the authentication of the wiretap tapes; the sufficiency of the evidence to support conviction on the drug charges; the applicability and constitutionality of § 468A; the Trial Court's instructions to the jury regarding possession of a deadly firearm during the commission of a felony; and the legality of the search of the defendant's house. We consider those issues seriatim.

## I.

Defendant's conviction is attributable to evidence obtained from a telephone wiretap authorized under the Delaware Wiretapping and Electronic Surveillance Act (hereinafter "Delaware Act"), 11 Del.C. § 757 (recently recodified as 11 Del.C. § 1336). At trial, the defendant challenged the admissibility of the wiretap product and all evidence resulting from it, alleging numerous violations of his constitutional rights. On appeal, he repeats his attack upon the legality of the wiretap.

In denying motions to suppress the intercepted telephone communications at issue, the Superior Court upheld the constitutionality of 11 Del.C. § 757. See *State v. Wilson,* Del.Super., 306 A.2d 743 (1973). Reference is made thereto for a detailed statement of the factual background pertinent to the contentions here under consideration.

### A.

The defendant contends generally that Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A. §§ 2510–2520, and the Delaware Act, which is patterned after the Federal Act, are facially unconstitutional.

In support of that contention, the defendant argues generally that wiretapping violates (1) the rights of privacy freedom of association, expression, and communication protected by the First Amendment; (2) the Fourth Amendment's guarantees that all searches must be reasonable and authorized by proper warrant; and (3) the fundamental constitutional guarantees of the Fifth Amendment. In effect, defendant's initial argument is that the First, Fourth and Fifth Amendments and Article 1, Section 6 of the Delaware Constitution[1] preclude any wiretapping. We reject those contentions.

The essential constitutionality of wiretapping and electronic surveillance statutes is no longer in doubt. A statute prescribing narrowly restricted wiretapping under carefully circumscribed conditions is permissible. *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The sweeping arguments made by the defendant in this regard have been rejected by all of the Circuit Courts of Appeal cases which have come to our attention. See e. g., *United States v. Tortorello,* 2 Cir., 480 F.2d 764 (1973); *United States v. Cafero,* 3 Cir., 473 F.2d 489 (1973); *United States v. Sklaroff,* 5 Cir., 506 F.2d 837 (1975); *United States v. Cox,* 8 Cir., 462 F.2d 1293 (1972); *Cox v. United States,* 10 Cir., 449 F.2d 679 (1971).

### B.

Focusing more directly on the Delaware Wiretap Act, defendant contends generally that the Act is constitutionally defective because: (1) of the duration and continuous nature of the search permitted under it; (2) it places too much discretion in the hands of the police officers executing a

---

1. Del.Const. Art. 1, Sec. 6 provides:
 "§ 6. Searches and seizures.
 "Section 6. The people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation."

wiretap order; and (3) prompt notice to those who have been subjected to such surveillance is not required. In general, the defendant argues that the Delaware Act does not meet the constitutional standards set by *Berger v. New York, supra,* and incorporated in Title III of the Omnibus Crime Act. His arguments are obviously taken from *United States v. Whitaker,* E.D.Pa., 343 F.Supp. 358 (1972).

█ We decline to engage in a lengthy analysis of those arguments. They were considered by the Court below and found unpersuasive. 306 A.2d at 746. We agree with the Superior Court "that the authorization of electronic surveillance and interception of wire communications as authorized by [the Delaware Act] violates none of the constitutional provisions raised * * *." 306 A.2d at 748 (1973). In addition, although not called to our attention by defense counsel, we note that the position taken by the *Whitaker* Court as to the same constitutional arguments was rejected in *United States v. Cafero,* 3 Cir., 473 F.2d 489 (1973) and, further, that *Whitaker* itself was ultimately reversed. 474 F.2d 1246 (1973).

More specifically, the defendant argues that the Delaware Wiretap Act unconstitutionally places uncontrolled discretion in the hands of those executing a wiretap order because it does not state in the words of the Federal Act that the interception "must terminate upon attainment of the authorized objective, * * *." 18 U.S.C. § 2518(5).

The Delaware Wiretap Act provision applicable here[2] [11 Del.C. § 757(k)(6)] required that a wiretap order provide:

"The period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.

No order entered under this section shall authorize the interception of any wire or oral communication for a period of time in excess of that necessary under the circumstances. Every order entered under this section shall require that such interception begin and terminate as soon as practicable and be conducted in such a manner as to minimize or eliminate the interception of such communications not otherwise subject to interception under this act. In no case shall an order entered under this section authorize the interception of wire or oral communications for any period exceeding 30 days."

This section was identical to Section 12 of the New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 *et seq.* The New Jersey Superior Court addressed a similar argument in *State v. Christy,* N.J.Super., 112 N.J.Super. 48, 270 A.2d 306 (1970). We find the rationale of *Christy* persuasive.

The Delaware Act required that the order provide that the interception and "as soon as practicable." It was for the court issuing the wiretap order to determine the period of time "necessary under the cir-

2. We note that 11 Del.C. § 1336(k)(6), formerly § 757(k)(6), has recently been amended and now provides in part: "No order entered under this section shall authorize the interception of any wire or oral communication for a period of time *longer than is necessary to achieve the objective of authorization,* nor in any event longer than 30 days. Every order entered under this section shall require that such interception begin and terminate as soon as practicable and may be conducted in such a manner as to minimize or eliminate the interception of such com-

munications not otherwise subject to such interception under this section. In no case shall an order entered under this section authorize the interception of wire or oral communications *beyond the attainment of the authorized objective* or in any event for any period exceeding 30 days. Extensions or renewals of such an order may not be granted unless an application for it is made in accordance with this section, and the Court makes the findings required by subsections (i), (j), and this subsection." (Emphasis supplied)

cumstances." Section ·757(k)(6) required the cessation of a wiretap when it was no longer productive of any fresh culpatory conversations. As *Christy* points out,

"This language is that of limitation, not license. It did not therefore invest the executing officers with unfettered discretion to extend their intrusions beyond that period of time deemed necessary by the issuing judge. Rather, it constituted a restriction on the officers to desist from further intrusions as soon as their evidential quest was completed. Its inclusion in this order consequently reflects an independent judicial determination that a particular period of time, in this case 30 days, was necessary under the circumstances to ascertain the full extent of the criminal activity and the identities of criminal participants, but that if such discovery were accomplished at an earlier time within that period, interceptions should then terminate." 270 A.2d at 320–321.

■ Defendant's argument in this regard was also considered by the Superior Court in this case. We agree with the Superior Court's interpretation of Section 757(k)(6) as requiring "automatic termination when the described communication has been first obtained unless the judge finds probable cause to justify continued surveillance." 306 A.2d at 747. For that reason, and because the Delaware Act requires a particular description of the type of communication sought to be intercepted [11 Del.C. § 757(h)(3)(c) and (k)(4)], and provides for suppression if "[t]he interception was not made in conformity with the order of authorization" [11 Del.C. § 757(t)], we think it did not place too much discretion in the hands of the executing officers.

## C.

■ Defendant also contends that the wiretap was unlawful because the application for the order authorizing it was insuf-

ficient under the Delaware Act. It is argued that the order did not contain the required "full and complete statement as to whether or not other normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ; * * *" 11 Del.C. § 757(h)(3)(f).

That contention is without merit for the reasons stated by the Superior Court. 306 A.2d at 748–750. In addition, we point out that the purpose of the exhaustion requirement of § 757(h)(3)(f)

"* * * is not to foreclose the use of electronic surveillance until the State has exhausted every possible means of obtaining a viable case . . ., but merely to inform the authorizing . . . . judge of the nature and progress of the investigation and the difficulties inherent in the use of normal techniques." *United States v. Lanza,* D.Fla., 356 F.Supp. 27, 30 (1973).

## II.

The defendant contends that the Trial Court erred in admitting the wiretap tapes into evidence because the chain of custody and authenticity of the tapes were not shown with "reasonable certainty." We find no merit in this contention.

■■ Although the evidential integrity of the tapes that were played at trial is not beyond question, there is no deficiency so substantial as to render the tapes untrustworthy. The test is reasonable probability that no tampering occurred. See *Clough v. State,* Del.Supr., 295 A.2d 729 (1972); *Tatman v. State,* Del.Supr., 314 A.2d 417 (1973). In our opinion, that test has been met here by the chain of authenticity and custody established by the State.

## III.

The defendant contends that the evidence was insufficient to establish intent to sell beyond a reasonable doubt.

618

Five tinfoil packets of narcotic drugs were seized during the authorized search of defendant's home. Two of the packets contained "cut" heroin and three contained "cut" cocaine. The total quantity of narcotic drugs by weight was less than a quarter of an ounce. The defendant argues that without "evidence that the quantity was so large that sale seems probable", there is insufficient evidence to sustain a verdict of possession with intent to sell. We do not agree.

■■ "Quantity and possession do not, standing alone, necessarily prove intent to sell, but must be considered with the attendant circumstances." *Perry v. State*, Del.Supr., 303 A.2d 658, 659 (1973). Similarly, quantity, standing alone, does not disprove intent to sell. The quantity possessed in this case was not the total evidence against this defendant upon the basis of which the jury found him guilty of possession with intent to sell. Compare *Redden v. State*, Del.Supr., 281 A.2d 490 (1971). Here, the evidence includes lawfully intercepted telephone conversations revealing defendant as an active peddler of narcotics and the testimony of a witness describing the manner in which defendant provided him with drugs.

We are satisfied that the evidence in this case, viewed in its entirety and including all reasonable inferences, was sufficient to support defendant's drug convictions.

IV.

The defendant's general contentions concerning the applicability and constitutionality of 11 Del.C. § 468A, (possession of a deadly firearm during commission of a felony) are identical to those considered and rejected in *Mack v. State*, Del.Supr., 312 A.2d 319 (1973).

■ The defendant's attempt to "distinguish" *Mack* is not persuasive. *Mack* does not leave open the question posed by

the defendant of whether "accessible possession of the firearm refers to accessibility of the weapon at the time of the defendant's arrest or to its proximity to the locus of the commission of a continuing felony * * *." In *Mack*, we held "a felon is in 'possession' of a deadly weapon, within the meaning of § 468A, only when it is physically available or accessible to him during the commission of the crime." 312 A.2d at 322. The "crime" in the instant case is possession of narcotic drugs with intent to sell. The record supports the finding that the loaded rifle and the loaded handgun were physically available or accessible to defendant during the commission of that continuing felony. Both weapons were located less than 25 feet from the place where the narcotic drugs were discovered.

We hold that § 468A is applicable and constitutional under the circumstances of this case.

V.

The defendant contends that the Trial Court erroneously instructed the jury with respect to the charge of possession of a deadly firearm during the commission of a felony, and that such error was prejudicial and requires reversal as to this charge.

■ The defendant was indicted under § 468A for possession of a deadly firearm during the felonious possession of heroin with intent to sell. He was not indicted for possession of a deadly firearm during the felonious possession of cocaine with intent to sell.

The challenged instruction included the following:

"Both charges of possession of heroin and possession of cocaine with intent to sell are felonies. If you find the defendant guilty of either of these charges, you may then consider the charge of possession of a firearm during the commission of a felony. However, if you

find the defendant not guilty of both of the charge of possession of heroin and the charge of possession of cocaine with intent to sell, you should not consider the charge of possession of a firearm during the commission of a felony."

It is apparent that the instruction was erroneous in that it assumed a charge of possession of a deadly firearm during the commission of the cocaine offense.

We are of the opinion, however, that the error did not affect substantial rights of the defendant and was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The jury found defendant guilty of possession of heroin and cocaine with intent to sell and of possession of a deadly firearm during the commission of a felony. The conviction and sentence on the weapon charge was supported by the heroin indictment and conviction alone. On the whole record "it appears · that justice has been done, and there appears no substantial misdirection of the court by which the prisoner's rights were injuriously affected * * *." *Bove v. State,* Del.Supr., 134 A. 630, 631 (1926).

### VI.

The defendant's final assertion is that the police officers violated the "knock-and-announce" rule, *Dyton v. State,* Del. Supr., 250 A.2d 383 (1969), and that the Trial Court erred in refusing to suppress the drug and weapon evidence seized during the authorized search of his home. We see no error in the denial of defendant's motion to suppress.

 Following the suppression hearing the Trial Judge stated:

"I think the situation was potentially explosive. There is an indication that at least one officer knew that there was a weapon in the premises and that there . had been a threat made that it would be used. I think that there was an emer-gency situation and that it was important that the policemen get to the scene and in the premises quickly and I think under all the circumstances, applying a rule of reason—that the execution [of the search warrant] was reasonable."

We agree. The evidence justifies the Trial Judge's ruling that the search was reasonable. *Marvel v. State,* Del.Supr., 290 A.2d 641 (1972). Unlike the situation in *Tatman v. State,* Del.Supr., 320 A.2d 750 (1974), the instant case contained a substantial foundation to support the police officer's good faith belief that "full and complete compliance with the rule would have· increased their peril, frustrated the arrest, or permitted destruction of evidence." *Tatman v. State, supra* 320 A.2d at 751. The police officers had a substantial basis for assuming defendant was armed and might resist arrest. In addition, they had made an "independent investigation of [the defendant] prior to setting the stage for his arrest with the narcotics in his possession." *Sabbath v. United States,* 391 U.S. 585, 591, 88 S.Ct. 1755, 1759, 20 L.Ed.2d 828, 834 (1968).

\* \* \* \* \* \*

The judgment below is affirmed.

DUFFY, Justice (dissenting and concurring):

I dissent from that part of the Court's opinion which affirms defendant's conviction under 11 Del.C.· § 468A for possession of firearms during the commission of a felony. In all other respects I concur in the opinion.

There is no dispute about the facts. Defendant stood trial under four separate counts, three of which are included in a twelve-count indictment (Cr.A. No. 1403, 1972). One of· those counts charged. him with possession of a "narcotic drug with intent to. sell, to wit: Heroin." Another count in the same indictment charged him with possession of firearms "during the commission of a felony, to wit: Possession

of a Narcotic drug with Intent to Sell . . . to wit: Heroin, . . ."* The fourth charge on which defendant was tried (Cr.A. No. 925, 1973) was for "possession of narcotic drug with intent to sell, to wit: Cocaine."

It is thus clear that the firearms charge related only to the possession of heroin, not to possession of cocaine. But the Court charged the jury as follows:

> "Both charges of possession of heroin and possession of cocaine with intent to sell are felonies. If you *find the defendant guilty of either of these charges,* you may then consider the charge of possession of a firearm·during the commission of a felony. However, if you find the defendant *not guilty of both* the charge of possession of heroin and the charge of possession of cocaine with intent to sell, you should not consider the charge of possession of a firearm during the commission of a felony." (Emphasis supplied.)

Under that instruction the jury was permitted to find defendant guilty of possession of firearms if it convicted him on the cocaine .count, on which the weapons charge was *not* based. In brief, the jury was permitted to convict defendant of a charge for which he was neither indicted nor noticed, nor tried. And since it may well have taken up that judge-given option to convict (and for present purposes we must assume that it did), the error was surely not harmless beyond a reasonable doubt when a thirty-year sentence was the result.

It is no answer to say that an indictment charging defendant with possession of a narcotic drug with intent to sell would· have been sufficient without identification of the drug, or to say that proof of possession of cocaine with intent to sell would have supported an indictment for possession with intent to sell heroin. Those is-sues are simply not in the case. The fact is that defendant was put on trial on three counts out of a dozen contained in one indictment and on the single count contained . in a separate indictment. As a matter of law he was entitled to know before trial what charges the State expected to prove and for which he would be sentenced if convicted.

I would reverse and remand for a new trial the conviction for possession of firearms during the commission of a felony.

---

* Another count, in the same indictment, on which defendant stood trial, charged violation of 11 Del.C. § 468B: possession of firearms by a person having been convicted of a felony.