OPINION OF THE COURT
Raymond Harrington, J.
The defendant has moved, through his attorney, for an *796 order, inter alia, suppressing the fruits of an electronic surveillance, or, in the alternative, granting a hearing to determine whether there should be such suppression. (CPL 710.20 [2]; 710.60 [2] [a]; [4].)
The original eavesdropping order in this matter was signed by the late David T. Gibbons, a Justice of the Appellate Division, Second Department, on July 22, 1985. Justice Gibbons subsequently signed orders of extension on August 20 and September 19, 1985, and an order of amendment on September 13, 1985.
The defendant attacks these orders on several grounds. Among them he contends that the fruits of the electronic surveillance must be suppressed because the original eavesdropping order did not contain a directive that interception of communications "must terminate upon attainment of the authorized objective”, as required by CPL 700.30 (7). The eavesdropping warrant of July 22, 1985 contained the following provision: "The eavesdropping is authorized for thirty (30) days, specifically, from the 22nd day of July, 1985, to and including the 20th day of August, 1985, twenty-four (24) hours a day, seven (7) days a week, and shall not automatically terminate when a conversation and discussion particularized above is first obtained but in any event shall terminate on August 20, 1985.” The defendant argues that this is a "duration directive” only, and is neither the functional equivalent of a "termination directive” nor a combination "duration-termination directive”. He further argues that the inclusion of a specific "termination directive” in an eavesdropping order is mandatory, and that a failure to so include it must result in the suppression of all evidence obtained as a result of the execution of the order.
FAILURE OF THE ORDER TO REQUIRE THAT INTERCEPTION CEASE UPON ATTAINMENT OF THE OBJECTIVE
CPL 700.30 (7) provides, in pertinent part, that:
"An eavesdropping warrant must contain * * *
"7. A provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to eavesdropping under this article, and must terminate upon attainment of the authorized objective, or in any event in thirty days” (emphasis supplied).
The defendant, Anthony Scarnati, contends that the origi *797 nal wiretap order of July 22, 1985 did not contain a clause or directive that interception must terminate upon the attainment of the authorized objectives. Indeed, the People concede that such a directive was not included within the July 22, 1985 order. Examination of the order by this court reveals that directives concerning duration, execution as soon as practicable, and minimization were all included within the order. The court also takes note that CPL 700.30 (7) was complied with in all respects in each extension order and in the amendment order which followed the original order of July 22, 1985.
The question before this court is whether the failure of an eavesdropping warrant to contain a so-called "termination directive” requires suppression of the fruits of said eavesdropping. The court is aware that some commentators and several courts of our sister States have adopted a strict construction of the statutory mandate and have granted suppression upon a failure by the issuing magistrate to make a termination directive (Carr, Electronic Surveillance § 4.07 [5] [a] [iv], at n 701 [1st ed]; § 4.7 [c] [1] [D], at n 854 [2d ed 1986]; State v Pottle, 296 Ore 274, 677 P2d 1 [1984]; State v Maloof, 114 RI 380, 333 A2d 676 [1975]; Matter of Olander, 213 Kan 282, 515 P2d 1211 [1973]; Johnson v State, 226 Ga 805, 177 SE2d 699 [1970]; Cross v State, 225 Ga 760, 171 SE2d 507 [1969]; State v Siegel, 266 Md 256, 292 A2d 86 [1972]; State v Luther, 116 RI 28, 351 A2d 594). However, the court is also aware that the Federal Circuit Court of Appeals for the Third Circuit and several other States have taken the position that a failure to include a termination directive in the warrant will not necessarily always be fatal (United States v Cafero, 473 F2d 489 [3d Cir 1973], cert denied 417 US 918 [1974]; State v Wilson, 306 A2d 743 [Del Super Ct], affd 343 A2d 613, 616-617 [Del Sup Ct 1975]; State v Moccia, 119 NH 169, 400 A2d 44, 46 [Sup Ct 1979]; cf. State v Christy, 112 NJ Super 48, 270 A2d 306 [1970]; State v Brennen, 218 Neb 454, 356 NW2d 861, 864 [1984]).
In the view of this court, the language regarding inclusion of a termination directive in an eavesdropping warrant is mandatory (see, CPL 700.30, and all cases cited supra). The question is whether the failure to comply with the mandate warrants suppression of the evidence. It is abundantly clear to this court that "must” indeed means "must”, not "may” (McKinney’s Cons Laws of NY, Book 1, Statutes § 177). As the majority of the Oregon Supreme Court so eloquently pointed *798 out: "The legislature has guaranteed that people trained in the law will be involved in the [eavesdropping] application procedure. We believe that it is not too 'picky’ to expect a person holding the office of district attorney to read the entire statute governing the contents of the application and order, and follow it” (State v Pottle, 296 Ore, at p 288, 677 P2d, at p 8).
Of course, automatic termination upon attainment of the objectives of the eavesdropping is required in the execution of the warrant as a matter of law, whether the order contains a directive to that effect or not. "Carte blanche is given no one” (United States v Cafero, supra, at p 496). The court observes that no factual allegation is made here to support an inference that the eavesdropping officers failed to terminate upon attainment of the objectives of this warrant. Indeed, the warrant directed 10-day progress reports to be made, which presumably gave the issuing magistrate the opportunity to review whether termination was actually appropriate prior to the 30-day final termination (see, Carr, op. cit., at 206 [1st ed]).
On the other hand, the court, upon review of all of the orders issued by Justice Gibbons, is not persuaded that the lack of a termination directive in the July 22, 1985 order was merely a "clerical” or secretarial error rather than a mistake by the Assistant District Attorney draftsman (see, United States v Poeta, 455 F2d 117 [2d Cir 1972], for a genuine secretarial error). To the extent that the People presently suggest that "mere oversight” or inadvertence should excuse their failure to comply with a mandatory statute, that assertion is rejected. Because of the point made by the Oregon Supreme Court in State v Pottle (supra, at p 288, at p 8) those cases cited by the prosecution holding that mere oversight excuses compliance with CPL 700.30 are not persuasive to this court (Vitello v Gaughan, 544 F2d 17, 18 [1st Cir 1976]; People v Solomon, 74 Misc 2d 926).
Simply, the question here thus becomes whether a shortcoming in drafting requires the remedy of suppression when the order omits no other essential element and the omission is of no consequence in the actual execution (State v Pottle, supra, at p 290, at p 10). Put more trenchantly by a dissenter in the Pottle case, the question is: "What privacy right has been violated by the scrivener’s error in leaving out this redundant expression?” (State v Pottle, supra, at p 298, at p 14.)
*799 In all of the cases concerning mandatory suppression cited by the defendant in his memorandum of law, as well as in those cited by this court above, the holdings were not based solely upon the eavesdropping warrant not containing a termination directive. Rather, the holdings related to the failure of the order to contain other directives, sometimes combined with an actual failure to comply with the omitted directives in the execution of the warrant. For example, in People v Holder (69 Misc 2d 863 [1972]), the order failed to include a mandatory minimization directive, and there was a subsequent complete failure to actually minimize. In People v Pieri (69 Misc 2d 1085 [1972]), the warrant was declared invalid because it authorized interception for a full 30 days without justification. In other words, in People v Pieri (supra) the duration directive was not justified by the application (Carr, op. cit., § 4.07 [5] [a] [iii] [1st ed]). United States v Carubia (377 F Supp 1099 [US Dist Ct, EDNY 1974]) was a case where the issuing magistrate, in striking the talismanic termination language, merely confused a termination directive with the power to authorize that interception not cease immediately upon the described communications first being overheard (see, 18 USC § 2518 [4] [c]). In State v Maloof (supra), the original and extension orders did not contain termination directives. Finally, in State v Johnson (supra) and in Cross v State (supra) the warrants did not contain directives for execution to commence as soon as practicable, minimization, and termination.
The court in People v Palozzi (44 AD2d 224 [4th Dept 1974]), while not deciding whether a termination directive must be included in an eavesdropping warrant, finds that the failure to do so in that case did not actually prejudice the defendant. In the view of this court, that case suggests that some actual prejudice might be necessary to warrant the remedy of suppression (see, State v Moccia, 404 A2d 44, 46, supra, for a harmless error analysis; see, United States v Manfredi, 488 F2d 588 [2d Cir 1973], for a commonsense realistic evaluation procedure; see, United States v Austin, 399 F Supp 698 [US Dist Ct, EDNY 1975], for a de minimis analysis of such error).
In the final analysis, this court finds that this is a de minimis scrivener’s or drafter’s error. No showing of any prejudice has been made and, indeed, the warrant was properly executed. The issuing magistrate, based upon progress reports, was in a position to evaluate termination during the 30-day period and did so. Under all these circumstances, the remedy of suppression of the evidence for this drafter’s error *800 is inappropriate in this case and the motion to suppress the evidence on this ground is denied. Whether our statute or our Constitution require a strict liability standard for such error, as some of our sister States have held, is for our higher courts to decide. This court views the rule of United States v Cafero (supra) to be the sensible approach to such a problem and adopts the prejudice analysis used by the Fourth Department in People v Palozzi (supra).
That portion of the defendant’s motion seeking an order suppressing the evidence obtained as the result of an electronic surveillance, on the ground that the eavesdropping warrant did not contain a "termination directive”, is denied in all respects.