IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MALIK WILLINGHAM, | § | |
| | § | |
| Defendant Below, | § | No. 189, 2022 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID Nos. N1910009457A |
| | § | N1910009457B |
| Appellee. | § | |

Submitted: February 24, 2023
Decided: April 27, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## ORDER

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)     After an initial trial that resulted in a mistrial, in November 2021 a Superior Court jury found the defendant-appellant, Malik Willingham, guilty of two counts of drug dealing (cocaine and methamphetamine), possession of a firearm during the commission of a felony ("PFDCF"), and possession of a firearm by a person prohibited ("PFBPP").[1]  The Superior Court sentenced Willingham to a total

---

[1] The PFBPP charge was tried to the same jury as a separate "B" case, after the jury reached its verdict on the other charges.

of forty-one years in prison, suspended after a total of eight years for decreasing levels of supervision. This is Willingham's direct appeal.

(2) The evidence presented at trial reflects that on the morning of October 15, 2019, New Castle County police officer Mark Scullion was working as a member of the Mobile Enforcement Team, which was assigned to perform proactive patrol to address quality-of-life issues, including drug activity. As the officer drove along the main road entering the Sparrow Run neighborhood, a car with heavily tinted windows drove past him. Officer Scullion noticed an odor of marijuana as the car passed. He ran the license plate and discovered that the vehicle's registration was suspended. He then made a U-turn, intending to conduct a traffic stop based on the suspended registration, but the car had parked at a nearby convenience store and the driver, Willingham, had exited the vehicle to enter the store. Willingham returned to the car and drove across the road to another convenience store. Officer Scullion conducted a motor vehicle stop in the parking lot of the second store.

(3) As Officer Scullion approached the driver's side door, he could smell the odor of marijuana and observed a marijuana blunt on the center console. Officer Scullion asked Willingham if he had marijuana, and Willingham said that he did. Officer Scullion decided to detain Willingham to search him and the car. The officer asked Willingham to exit the car, and placed him in handcuffs and told him that he was not under arrest but was being detained. Willingham admitted that he had a

2

small amount of marijuana in his pocket. The officer searched Willingham and found $415 in cash.

(4) Other officers from the Mobile Enforcement Team began arriving on the scene, and Officer Scullion and the other officers searched the car. The officers' body-worn cameras captured much of the search. In a bookbag that was on the front passenger seat, the officers found 51 small orange containers of suspected crack cocaine, 19 small blue containers of suspected methamphetamine, and a digital scale. In the pocket of the driver's side door, the officers found a loaded .223 rifle magazine wrapped in a plastic bag and rubber gloves. In the trunk of the car, the police officers found a large amount of personal property, including clothing, shoes, and toys. Behind the personal property, in the section of the trunk behind the rear passenger seat of the car, they found an unloaded Ruger Sturm .223 rifle.

(5) A forensic DNA analyst testified that a DNA swab taken from the rifle's grip produced a single-source DNA profile that matched Willingham's reference sample. A forensic analytical chemist testified that 22 of the orange containers had crack cocaine, and he estimated with a 95% probability that the 51 containers of crack cocaine weighed a total of 3.43 grams, plus or minus .15 grams. He testified that 15 blue containers had methamphetamine and estimated with a 95% probability that the 19 blue containers weighed a total of 15.5 grams, plus or minus .056 grams. A member of the Delaware State Police Drug Task Force opined that

the amount and packaging of the drugs, the presence of paraphernalia consistent with drug dealing, the absence of paraphernalia for drug consumption, and the fact that Willingham had $415 in cash demonstrated that the drugs were meant for distribution.

(6)     The car was registered to Willingham and Kevin Mahoney, who testified that he had co-signed a loan with Willingham to purchase the car, when Willingham and Mahoney's daughter were in a relationship, but had not driven the car since the purchase.  Police contacted Mahoney after Willingham's arrest to retrieve the vehicle.  Mahoney cleaned out the car and discarded many items, and his daughter returned others to Willingham.  Because the police officers did not preserve the backpack or the clothing as evidence, the court provided the jury with a missing-evidence instruction.  The defense argued that the dual registration and the presence of certain items in the car suggested that there were other users or drivers of the car.  The defense also argued that the items in the trunk could have transferred Willingham's DNA onto the rifle.

(7)     Willingham was represented by counsel before and during his November 2021 trial.  After his conviction, Willingham asked his counsel to file a motion to withdraw.  The Superior Court held a hearing on December 17, 2021, and the court granted the motion.  Willingham proceeded *pro se* after that time, including in this appeal.

4

(8)     Willingham asserts three claims of error in his opening brief on appeal. First, he contends that the Superior Court erred by declining to hear the merits of a *pro se* motion to suppress that he submitted when he was represented by counsel. Willingham asserts that he attempted orally "several times" to challenge the search as unconstitutional. On June 8, 2021, Willingham filed a *pro se* motion to suppress the evidence obtained from the search. The Superior Court referred the motion to Willingham's counsel. On June 14, 2021, at the final case review before the first trial, Willingham argued that his counsel was ineffective for not filing a motion to suppress, argued that the evidence should be suppressed, and asked the court to consider his motion on the merits.[2] The court declined to decide the motion on the merits, stating that "[i]t is a rule of this court that the court does not entertain applications by people who are represented by counsel."[3] The court also explained that while certain decisions are the client's to make, others are the lawyer's to make, and the decision about whether to file a motion to suppress was within counsel's professional judgment.[4]

(9)     Willingham raised the issue again during the second trial and in a letter that he sent to the court before that trial. The Superior Court again explained that it was counsel's decision whether to file a suppression motion, and that three different

---

[2] App. to Answering Br. at B23-27.
[3] *Id.* at B27.
[4] *Id.* at B27-31.

attorneys had determined that they did not have a good faith basis to file a suppression motion, including after having the benefit of sworn testimony during the first trial.[5] The court declined to consider the suppression issue on the merits.

(10) The Superior Court did not err by declining to consider Willingham's *pro se* motion to suppress. Under Superior Court Rule 47, the Superior Court "will not consider pro se applications by defendants who are represented by counsel unless the defendant has been granted permission to participate with counsel in the defense."[6] Willingham "was not granted permission to participate with counsel in the defense and the Superior Court was not required to consider his *pro se* motion to suppress."[7]

(11) Second, Willingham argues that the police search of his person and vehicle were unconstitutional, and the resulting evidence should have been suppressed. Specifically, he argues that the searches exceeded the "scope and initial justification" of the traffic stop, without probable cause for the warrantless searches. Because Willingham did not assert the merits of his claim in a properly presented

---

[5] *State v. Willingham*, I.D. No. 1910009457A, Trial Transcript, at 11-13 (Del. Super. Ct. Nov. 2, 2021).

[6] DEL. SUPER. CT. R. CRIM. PROC. 47.

[7] *Blenman v. State*, 2016 WL 889551, at *3 (Del. Mar. 8, 2016); *see also McGlotten v. State*, 2008 WL 5307990, at *2 (Del. Dec. 22, 2008) ("[T]he record reflects that the Superior Court properly refused to consider McGlotten's motions [to compel and to suppress] when he was represented by counsel.").

motion, as discussed above, we review for plain error.[8] We find no plain error in the circumstances of this case.

(12) Police may lawfully search a vehicle without a warrant if the police have probable cause to believe that the automobile is carrying contraband or evidence of criminal activity.[9] "Probable cause determinations are made by evaluating the totality of the circumstances."[10] The record reflects that Officer Scullion smelled an odor of marijuana emanating from the car that Willingham was driving and of which he was the sole occupant; that the officer observed a marijuana blunt on the center console when he approached the car; and that when Officer Scullion asked Willingham if he had marijuana, Willingham admitted that he did. These facts are sufficient to establish that Officer Scullion had probable cause to believe that Willingham's vehicle contained contraband or evidence of criminal activity, including consumption of marijuana in a moving vehicle in violation of 16 *Del. C.* § 4764(d).[11]

---

[8] *Cf. Pollard v. State*, 284 A.3d 41, 44 (Del. 2022) (applying plain error standard of review to claim that Superior Court erred by failing to suppress evidence derived from vehicle search *sua sponte*).

[9] *Id.* at 46.

[10] *Id.* (internal quotations omitted).

[11] *See id.* at 47 (concluding that officers had probable cause to search a vehicle where the officers smelled marijuana emanating from the vehicle, observed marijuana remnants in the center console and on the floor of the vehicle, and observed a small nugget in the center console of the vehicle).

(13)  As to the search of Willingham's person, police may search a suspect incident to a lawful arrest.[12]  "While a search typically occurs after an arrest, this Court has held that where the arrest and search are nearly contemporaneous, the search may precede the arrest, so long as the police do not use the search to establish probable cause for the arrest."[13]  Willingham arguably was not under arrest when Officer Scullion searched him and found $415, but "he was arrested shortly afterwards" and the police did not use the $415 to establish probable cause to arrest him.[14]  Rather, the police had probable cause to arrest Willingham based on the drugs and rifle that they found when they searched the vehicle.  We find no plain error arising from the searches in this case.

(14)  Finally, Willingham asserts that the evidence presented at trial was insufficient to establish that he possessed the drugs and weapons.  Willingham did not move for a judgment of acquittal, and we therefore review for plain error.[15]  After reviewing the record, we conclude that a rational trier of fact, viewing the evidence in the light most favorable to the State, could find that Willingham possessed the drugs and rifle based on the evidence presented at trial, for purposes of convicting

---

[12] *Spencer v. State*, 2018 WL 3147933, at *4 (Del. June 25, 2018).

[13] *Id.* (internal quotations omitted).

[14] *Id.*

[15] *See Williamson v. State*, 113 A.3d 155, 157 (Del. 2015) ("[I]t is well-settled that in a jury trial, if a defendant fails to make a motion for acquittal to the trial court, the defendant has failed to preserve the right to appeal the issue of the sufficiency of the evidence to convict, and we . . . apply the plain error standard of review.").

him of the drug charges and PFBPP.[16]  Proof of constructive possession is sufficient to satisfy the possession element of the drug offenses and PFBPP.[17]  To establish constructive possession, the State must show that a defendant (i) knew the location of the contraband; (ii) had the ability to exercise dominion and control over the contraband; and (iii) intended to guide the destiny of the contraband.[18]  The cocaine and methamphetamine were located in a backpack on the passenger seat of the car of which Willingham was co-owner, and of which he was the driver and sole occupant.  The firearm was in the trunk of that same vehicle and had Willingham's DNA on it, and ammunition that fit that gun was located in the pocket of the driver-side door.  Officers also located pieces of mail addressed to Willingham in the vehicle, and Willingham's former girlfriend returned items from the car to Willingham after her father retrieved the car from impound.  We conclude that the evidence was sufficient to find that Willingham constructively possessed the drugs and firearms, for purposes of finding him guilty of the drug offenses and PFBPP.[19]

---

[16] *See Farmer v. State*, 844 A.2d 297, 300 (Del. 2004) (stating that the Court reviews claims of insufficient evidence to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt).

[17] *See Lecates v. State*, 987 A.2d 413, 418-421 (Del. 2009) (discussing the possession element of drug-possession offenses and possession of a deadly weapon by a person prohibited, both of which may be satisfied by proof of constructive possession, and contrasting that standard with the "more limited" possession standard applicable to possession of a deadly weapon during commission of a felony, which also requires proof that the deadly weapon was "physically available and accessible" to the defendant during the commission of the felony).

[18] *Bradley v. State*, 2018 WL 5304859, at *2 (Del. Oct. 24, 2018).

[19] *Cf. id.* (concluding that evidence was sufficient to establish defendant's constructive possession of drugs found in the trunk of a car that was registered to the defendant's mother where the

(15) To find Willingham guilty of PFDCF, the jury was required to determine that Willingham actually or constructively possessed the gun and that the gun was "physically available or accessible" to Willingham during the commission of the underlying felony.[20] "The elements of availability and accessibility, however, do not require the weapon to be in the offender's immediate physical possession or within easy reaching distance of the offender."[21] This Court has observed that the purpose of the PFDCF provision is to prevent a "non-violent" felony from becoming violent, and the term "during the commission of a felony" as used in the PFDCF statute "encompasses a somewhat extended time frame."[22]

(16) This Court has held that the availability or accessibility element was satisfied when a gun and drugs were found in the defendant's bedroom, even though the defendant was observed conducting drug transactions outside the home and was arrested outside;[23] drugs and guns were found in a handbag in the trunk of a car that

---

evidence included multiple documents with the defendant's name that were found in the car, a bag of men's clothing that was found in the trunk, and multiple recent accounts of the defendant's possessing the car).

[20] *Maddrey v. State*, 975 A.2d 772, 775 (Del. 2009); *Lecates*, 987 A.2d at 421 ("The State must establish physical availability and accessibility *in addition* to proving actual or constructive possession."). We note that the court instructed the jury that they had to find that "the weapon was in the immediate personal possession of, or under the immediate control of the defendant so that it was physically available or accessible during the commission of the crime" in order to find Willingham guilty of PFDCF.

[21] *Pauls v. State*, 476 A.2d 157, 160 (Del. 1984), *quoted in Lecates*, 987 A.2d at 419-20.

[22] *Lecates*, 987 A.2d at 420 (internal quotations omitted).

[23] *See Childress v. State*, 721 A.2d 929, 931-32 (Del. 1998) ("Here, a rational fact finder could conclude that Childress kept the firearm in such close proximity to his drug inventory that it was in his possession during the commission of the felony of drug trafficking. There was thus ample

an officer had seen the defendant driving, which was parked outside the home of the defendant and his girlfriend, and the defendant and his girlfriend were inside the home when the police executed a search warrant;[24] a rifle and handgun "were located less than 25 feet from the place where the narcotic drugs were discovered;"[25] and handguns were found in a locked safe in the defendant's bedroom, where drugs and drug paraphernalia were also located.[26] We find no plain error in Willingham's conviction for PFDCF on the basis of insufficient evidence.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice

---

evidence to support the jury's determination that Childress had immediate access to the firearm during the 'continuing felony' of his drug-dealing operation, and it is irrelevant that the firearm was unloaded when it was found in the search.").

[24] *Brooks v. State*, 2007 WL 1470649, at \*2 (Del. May 22, 2007); *see also id.* (stating that in *Kornbluth v. State*, 580 A.2d 556 (Del. 1990), "weapons found in close proximity to drugs in the same room were deemed sufficient to support a conviction for possession of deadly weapons during the commission of a felony, because the weapons were physically available or accessible to the defendant during the drug offense even though the defendant was not present at the time of the search").

[25] *Wilson v. State*, 343 A.2d 613, 618 (Del. 1975).

[26] *Maddrey v. State*, 975 A.2d 772, 777-79 (Del. 2009); *see also id.*at 773 ("Because the record reflects that the evidence was sufficient for a jury to reasonably infer that the handguns were available and accessible during the course of Maddrey's continuing felonies of Possession with Intent to Distribute Crack Cocaine and Maintaining a Dwelling for Keeping Controlled Substances, the judgment of the Superior Court must be affirmed.").