**Victor KORNBLUTH, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: June 19, 1990.
Decided: July 30, 1990.

---

Eugene J. Maurer, Jr., Wilmington, for appellant.

Timothy J. Donovan, Jr., Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY, and HOLLAND, JJ.

CHRISTIE, Chief Justice:

The defendant/appellant, Victor Kornbluth, was convicted of possession with intent to deliver marijuana, two counts of possession of a deadly weapon during the commission of a felony, possession of drug paraphernalia, and maintaining a dwelling for the use of marijuana. Kornbluth raises three issues on appeal. First, he contends that the trial court erred in allowing the prosecutor to introduce evidence of other crimes committed by the defendant through cross-examination and the rebuttal testimony of a confidential informant. Secondly, he alleges bad faith on the part of the prosecutor in that the prosecutor argued accomplice liability to the jury in his closing remarks, despite the trial court's ruling to the contrary. Finally, Kornbluth contends that the weapon convictions should be reversed because the two weapons seized at the residence were not "immediately available and accessible" to the defendant. We find appellant's contentions to be without merit and affirm the decision of the Superior Court.

In October of 1988, New Castle County police officers arrested Mary Gemignani on a variety of drug and drug-related charges. She informed police that the person who supplied her with the drugs was known as "Vic". The police subsequently learned that Gemignani was referring to Victor Kornbluth, the defendant in this case. In October and December of 1988, the police planned and executed two controlled purchases of marijuana by Gemignani from Kornbluth at his residence on Naamans Road near Claymont, Delaware.

On December 30, 1988, the police obtained and executed a search warrant at Kornbluth's house at approximately 2:03 p.m. Since no one was home at the time,

the police made a forced entry into the house. Inside the house, the police found twenty-five bags of marijuana (three in the kitchen freezer, four in a desk drawer in the den, one on a Frisbee inside the rear door, and seventeen in a blue cooler located next to the living room sofa). Behind the sofa, leaning against the wall, was a loaded shotgun. Beneath the same sofa was a large hunting knife. Also seized were several hundred empty plastic bags, rolling papers, "roach clips," a shotgun shell found on the coffee table in front of the sofa, and a variety of personal papers and documents which identified Victor Kornbluth. All of the evidence was found on the first floor of the residence. The second floor appeared to be unused.

Kornbluth surrendered himself to the police shortly after the search of his house, but denied any knowledge of the drugs found by the police. He contended that there were several keys to the residence and that the drugs must have been put there by someone else. At trial, Kornbluth continued to insist that the marijuana did not belong to him. He testified that six months before the search of the house, he had taken in a boarder named Frank Merlini, whom he had met at a bar. Kornbluth stated that Merlini slept on the living room sofa, while Kornbluth slept in one of the second floor bedrooms. On weekends, Kornbluth testified that he (Kornbluth) usually stayed in an apartment owned by his stepfather in Brigantine, New Jersey. On the weekend the police searched his house, Kornbluth was in Brigantine and Atlantic City as a guest of his stepfather. Despite efforts to locate him, Kornbluth never again saw or heard from Merlini after the police search.

Gemignani testified at trial that, in addition to the two controlled buys set up by the police, she had been buying significant amounts of marijuana from Kornbluth on a regular basis for the past four years. She testified that she had made numerous trips to Kornbluth's residence, but she had never seen or heard of Frank Merlini. At the conclusion of the trial, the jury found Kornbluth guilty of the five charges mentioned earlier. He was sentenced to a total of nine years' minimum/mandatory imprisonment, followed by two years' probation.

## I.

■■■ Kornbluth first contends that the trial court erred in allowing the prosecutor to introduce evidence of other crimes committed by the defendant through cross-examination of him and the rebuttal testimony of a confidential informant. This Court has established guidelines to govern the admission of testimony as to other crimes in criminal trials. *Getz v. State,* Del.Supr., 538 A.2d 726, 734 (1988). In order to be admitted into evidence, the evidence of other crimes must: 1) be material to an issue or ultimate fact in dispute in the case; 2) be introduced for a purpose sanctioned by D.R.E. 404(b);[1] 3) be proved by evidence which is "plain, clear, and conclusive" (*Renzi v. State,* Del.Supr., 320 A.2d 711, 712 (1974)); and 4) not be too remote in time from the charged offense. In addition, a fifth requirement is that the court must balance the probative value of such evidence against its unfairly prejudicial effect, as required by D.R.E. 403.[2] Finally, because such evidence is admitted for a limited purpose, there is a sixth requirement that the jury should be instructed

---

1. *D.R.E. RULE 404. CHARACTER EVIDENCE NOT ADMISSIBLE TO PROVE CONDUCT; EXCEPTIONS; OTHER CRIMES.*

 .  .  .  .  .

(b) *Other Crimes, Wrongs or Acts.* Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

2. *D.R.E. RULE 403. EXCLUSION OF RELEVANT EVIDENCE ON GROUNDS OF PREJUDICE, CONFUSION OR WASTE OF TIME.*

 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.

concerning the purpose for its admission as required by D.R.E. 105.[3] *Id.*

The defendant concedes that the first, second, and sixth prerequisites have been satisfied. It is with the third, fourth, and fifth prerequisites that Kornbluth takes issue. We first examine the other crime evidence in regard to the "plain, clear, and conclusive" standard enunciated in the *Renzi* case. During its case-in-chief, the State confined its examination to the search of Kornbluth's residence and the results of that search. In his defense, Kornbluth denied knowledge of the drugs found in the residence. He testified that he had taken in a boarder who lived on the first floor of the house and that the drugs probably belonged to him. During his cross-examination of Kornbluth, the prosecutor proffered that Gemignani would be called as a rebuttal witness and that he intended to question Kornbluth regarding the October and December police-arranged drug purchases Gemignani had made from the defendant. Defense counsel objected, but the objection was overruled, and the cross-examination of Kornbluth continued. Kornbluth admitted that he sold Gemignani marijuana on two separate occasions (in October and December of 1988), but insisted that he was only doing it as a favor to his boarder, Frank Merlini. He then denied selling drugs to Gemignani on any other occasion. The prosecutor then asked Kornbluth whether he had sold marijuana to anyone other than Gemignani, and defense counsel objected. The trial judge ruled that the prosecutor must limit himself to those transactions in which his rebuttal witness had participated.

Following the cross-examination of Kornbluth, the prosecution called two police officers and Gemignani as rebuttal witnesses. They testified about the two controlled marijuana purchases in October and December. Gemignani also testified that she had been buying significant quantities of marijuana from Kornbluth at his house for the past four years, that she had dealt only with Kornbluth, and that she had never seen nor heard of Kornbluth's alleged boarder, Frank Merlini.

Kornbluth contends that the evidence of the two controlled purchases was not plain, clear, and conclusive because it was presented through a confidential informant who expected leniency in treatment in exchange for her testimony. He further contends that one of the police officers testified that a "leafy green plant material" was turned over to him by Gemignani and was never identified as marijuana by the Medical Examiner.

This Court has held that the testimony of an eyewitness constitutes clear and conclusive evidence of other crimes. *Diaz v. State*, Del.Supr., 508 A.2d 861, 865 (1986). Gemignani's testimony about the controlled purchases plainly indicates that such acts had taken place. Further, corroboration of Gemignani's testimony was provided by the police officers who had arranged the purchases. Finally, two police officers and Gemignani testified that the "leafy green plant material" was marijuana and its identity was not an issue at trial. Thus, we find that the *Renzi* standard is satisfied. Since the trial judge limited the State's inquiries only to drug transactions in which Gemignani participated, we find that Kornbluth was not improperly prejudiced by such testimony.

Kornbluth next concedes that the October and December purchases were sufficiently close in time to satisfy the *Getz* standard, but contends that Gemignani's testimony with regard to other drug purchases within a four-year time span are too remote to be admissible. Since the evidence presented demonstrates a continuing series of drug-related transactions by Kornbluth over a four-year period of time which continued until a few days before the date of the charged crime, we find that the *Getz* standard has been satisfied with regard to the time requirement.

---

**3.** *D.R.E. RULE 105. LIMITED ADMISSIBILITY.*
When evidence which is admissible as to 1 party or for 1 purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

Finally, Kornbluth contends that the trial court did not balance the probative value of the evidence against its prejudicial impact as required by D.R.E. 403. During the conference between counsel for defendant and counsel for the State, the court, after considering the circumstances of the case, specifically limited the State's questioning of Gemignani to those transactions in which she was involved. Under the circumstances, the evidence of other crimes satisfies the requirements of *Getz*.

## II.

■ Kornbluth's second contention on appeal involves the State's reference to accomplice liability in its closing remarks. The defendant contends that the reference to accomplice liability, after the trial judge had specifically ruled that no instruction on the law of accomplice liability would be given, constitutes bad faith and reversible error.

At trial, Kornbluth testified that the drugs and weapons found in his house did not belong to him, but belonged to a boarder named Frank Merlini, who, according to Kornbluth, lived on the first floor of the residence. Kornbluth admitted showing Gemignani where the marijuana was located when she had come to his house on two occasions. He testified that he had shown her the marijuana at Merlini's request.

Based on this testimony by Kornbluth, the State requested an instruction to the jury on the law of accomplice liability. The trial judge declined to instruct the jury on accomplice liability, stating that "the purpose of [Kornbluth's] testimony was merely to show that he had knowledge whether there was marijuana in the house."

Despite the court's ruling, the prosecutor, during his closing remarks to the jury, stated, "If this defendant knows that those drugs are in his house ... he is an accomplice, even if you believe his version, to Frank Merlini. Under Delaware law, if you are an accomplice ... you're as guilty as if you did the crime yourself." After the prosecutor made his remarks, defense counsel objected, a sidebar conference was held, and Kornbluth's attorney requested a

mistrial. The Superior Court agreed that the prosecutor's remarks were impermissible, but refused to grant a mistrial. Instead, the Superior Court instructed the jury to ignore the prosecutor's remarks, stating, "[A]nything the State said and referred to about accomplice should be wiped from your memory, because it's not an issue in this case at all."

This Court has held that even when prejudicial error is committed, it will usually be cured by the trial judge's instruction to the jury to disregard the remarks. *Brokenbrough v. State*, Del.Supr., 522 A.2d 851, 857 (1987); *Diaz*, 508 A.2d at 866–867. Further, the prosecutor, in the rebuttal portion of his closing remarks, explained his reference to accomplice liability to the jury by stating, "the State is [not] charging him under an accomplice theory" and "he is not charged as an accomplice." We find that the defense counsel's objection, the Superior Court's instruction to the jury to disregard the prosecutor's statement, and the explanatory remarks by the prosecutor mitigated the effects of the comment and cured the prosecutor's error. Cf. *Boatson v. State*, Del.Supr., 457 A.2d 738, 743 (1983); *Edwards v. State*, Del.Supr., 320 A.2d 701, 703 (1974).

## III.

■ Finally, Kornbluth contends that the evidence was insufficient to support the two convictions for possession of a deadly weapon during the commission of a felony. He argues that the convictions should be reversed because he was not present at the time of the search and, therefore, the weapons were not "physically available or accessible to him during the commission of the crime." *Mack v. State*, Del.Supr., 312 A.2d 319, 322 (1973). The State contends that the physical location of the defendant at the time the drugs and weapons were found is not the point on which this case turns. Rather, the State argues that because the weapons and drugs were found within arm's reach of each other in the living room of Kornbluth's home, which was the locus of his continuing felony, the convictions must stand. We agree with the

State's position and uphold Kornbluth's weapon convictions.

Kornbluth relies on the case of *Gardner v. State,* Del.Supr., 567 A.2d 404 (1989), to support his contention. In that case, the defendant, Gardner, was arrested outside of his home for trafficking in cocaine. When the police searched Gardner's three-story residence, cocaine and drug paraphernalia were found in the basement and living room, and the deadly weapons in question were found in an upstairs bedroom. This Court held that, as a matter of law, the evidence did not support a conviction for possession of a deadly weapon during the commission of a felony since "[t]he clear legislative policy supporting the enactment of [the possession statute] is 'to discourage the *accessibility* of a deadly weapon during the commission of a crime, thus reducing the probability of serious harm to the victim.'" *Gardner,* 567 A.2d at 413 (citing *Mack v. State,* Del.Supr., 312 A.2d 319, 322 (1973)) (emphasis in original).

We find the facts in Kornbluth's case to be more analogous to the facts in *Mack v. State,* Del.Supr., 312 A.2d 319 (1973) and *Wilson v. State,* Del.Supr., 343 A.2d 613 (1975). In the *Mack* case, the defendant's apartment was searched and heroin and drug paraphernalia were seized by the police from a bedroom dresser. In addition, a loaded revolver was found in a chest of drawers in the same bedroom where the drug evidence had been seized. *Mack,* 312 A.2d at 320. This Court held that "a felon is in 'possession' of a deadly weapon ... only when it is physically available or accessible to him during the commission of the crime." *Id.* at 322. In *Mack,* we concluded that the location of the gun satisfied the accessibility test, since it was close at hand in the bedroom of the one-bedroom apartment, which was the location of the continuing felony. *Id.*

In the *Wilson* case, a loaded rifle and loaded handgun were found less than twenty-five feet from the place where the drugs were discovered. *Wilson,* 343 A.2d at 618. Relying upon *Mack,* this Court affirmed the defendant's conviction for possession of a deadly weapon during the commission of a felony. *Id.* at 618.

In Kornbluth's case, the knife and shotgun were located near the drugs in the living room of the house. The drugs and weapons were all within easy reach of someone sitting on the sofa. The locus of the continuing felony could well have been the entire first floor of the house, but, certainly the locus was the living room where both the drugs and weapons were found. In addition, Kornbluth had told Gemignani that "it was best to have a gun, dealing drugs." The fact that Kornbluth was not present in the house when the drugs and weapons were found is not relevant to the accessibility requirement discussed above. Under the facts of this case, we find that the Superior Court did not err, as a matter of law, in submitting the weapon charges to the jury and allowing the jury to decide the factual issue of accessibility.

\* \* \*

The judgment of the Superior Court is AFFIRMED.