**Andrew V. CHILDRESS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 555, 1997.

Supreme Court of Delaware.

Submitted: Nov. 4, 1998.

Decided: Dec. 30, 1998.

Joseph M. Bernstein, Wilmington, Delaware, for appellant.

John Williams, Deputy Attorney General, Department of Justice, Dover, Delaware, for appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND and HARTNETT, Justices, and STEELE, Vice–Chancellor,[1] constituting the Court en Banc.

PER CURIAM:

In this appeal, we hold that the elements of the crime of possession of a firearm during the commission of a felony may be satisfied when the defendant is arrested immediately outside his residence and an unloaded handgun is found in the residence under the defendant's bed in the same room as controlled substances and cash. We also hold that the trial court's charge to the jury that included the instruction that they should "not take more time than [they] need to reach proper verdicts" is not an impermissible commentary on the evidence. Accordingly, we affirm the judgment of the trial court.

### Facts

In the fall of 1996, the Delaware State Police launched an investigation into the drug-trafficking activities of Andrew Childress. As part of this operation, investigators placed Childress' residence under surveillance. On October 4, 1996, they observed a series of what appeared to be drug sales outside of Childress' home. Throughout the evening, cars would pull into the driveway, at which point Childress would enter his home and emerge moments later to engage in an exchange with the driver. Convinced that the house served as the base of Childress' drug-dealing operations, police obtained a search warrant for the residence.

Late in the evening of October 4, police arrested Childress immediately outside his home and executed the warrant. In Childress' second floor bedroom, the police discovered $1,874.00 in cash and 91 .21 grams of cocaine divided among 136 plastic bags. They also found an unloaded handgun under Childress' bed. On the basis of this evidence, a grand jury indicted Childress on various drug and weapon charges, including trafficking in cocaine and possession of a firearm during the commission of a felony.[2]

After the State's case-in-chief at trial, the defense moved for judgment of acquittal on the firearm charge. Childress argued that, since the firearm was well out of his reach when he conducted the alleged drug sales, he could not be convicted of "possessing" the firearm during the commission of a felony. The Superior Court denied the motion, finding that defendant's drug operation was an "ongoing felony" that took place, at least in part, in the upstairs bedroom where the police discovered both the firearm and the cocaine. Consequently, the court held that a jury could find that Childress possessed both the firearm and the drugs, and could thus permissibly convict him of the firearms charge.

After the close of evidence, and after instructing the jury on the relevant substantive law, the trial court commented to the jury as follows:

> The time for deliberations ... is totally within your discretion. Take as little time and as much as you need in order to reach proper verdicts based on the evidence. Take as much time as you need to reach proper verdicts based on the law and the evidence. Do not take more time than you need to reach proper verdicts based on the law and the evidence.

Defense counsel immediately objected to the final sentence, claiming that the remark implied that the trial court believed the defendant to be guilty and that the jury should not take a great deal of time to decide the case. The jury returned with its verdict—convict-

---

1. Sitting by designation pursuant to *Del. Const.*, art. IV, § 12, and Supreme Court Rules 2 and 4(a).

2. 11 *Del.C.* § 1447A(a) ("A person who is in possession of a firearm during the commission of a felony is guilty of possession of a firearm during commission of a felony.")

ing defendant on all charges—roughly forty minutes later. After polling the jury following the verdict, the trial court commented to the jury as follows:

> my concern about the time for the verdict is that it did not seem from the evidence that I heard that it was a particularly close case, and I was concerned that something that I may have said to you might have somehow suggested to you that fact and it worried me that the time of your deliberation might somehow have been influenced by something I said.

Apparently concluding that its previous comments had not influenced the jury, the trial court overruled the defense objection.[3]

### Firearm Charge

■ On appeal from the denial of a motion for a directed verdict of acquittal, we must determine, *de novo*, whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the defendant guilty beyond a reasonable doubt.[4]

On appeal, as he did at trial, Childress argues that the evidence against him was insufficient as a matter of law to support a conviction for possession of a firearm during the commission of a felony. He bases his argument on the geography of the searched premises. Childress points out that, while the alleged drug sales took place outdoors near the spot of his apprehension, the firearm was well out of reach in his second-story bedroom. This spatial separation of the firearm from the underlying crime, he claims, precludes a finding that he "possessed" the firearm during the commission of the felony.

■ The Superior Court correctly denied Childress' motion for judgment of acquittal. This Court has previously ruled that a defendant can be held to "possess" a firearm even if it is not found on his person.[5] The law does not look to actual, physical control, but rather to accessibility. "A felon is in 'possession' of a deadly weapon ... when it is *physically available or accessible to him* during the commission of the crime." [6]

■ More discretely, we hold that, considering the instant factual scenario, this case is controlled by our prior jurisprudence. We have held that, where the underlying felony involves the sale of drugs, a jury may find that the defendant possessed the firearm during the commission of a felony, so long as the drugs and firearm are found in close proximity to each other, even if neither is in close proximity to the defendant at the time of his apprehension.[7] The rationale is that a drug-sale operation is a "continuing felony" the "locus" of which is wherever the defendant keeps his contraband.[8] Necessarily, a drug dealer must draw on his inventory prior to a sale. Therefore, where (as here) the police discover a firearm next to a quantity of drugs sufficient to constitute a felony, the law permits the jury to infer that the gun was accessible to defendant at some point during the transaction for purposes of 11 *Del.C.* § 1447A.

Childress relies primarily on *Barnett v.*

---

3. After dismissing the jury, the trial court addressed the parties:

> Normally I would not have provided comments to the jury about my view of the case, but I was anxious to do that because I wanted to see the jury's reaction when I made those comments. I was looking for the slightest bit of assent or anything that would give me the sense that perhaps there was some concern on the jury's part.... If this case had been closer in my estimation, I would have no second thoughts about the comment that [Childress' attorney] objected to.

4. *See Davis v. State*, Del.Supr., 706 A.2d 523, 525 (1998).

5. *See, e.g., Kornbluth v. State*, Del.Supr., 580 A.2d 556, 560–61 (1990). The defendant in *Kornbluth* was found guilty of possession of a deadly weapon during the commission of a felony in violation of 11 *Del.C.* § 1447(a). This difference does not affect our analysis.

6. *Mack v. State*, Del.Supr., 312 A.2d 319, 322 (1973) (emphasis supplied); *see also Sexton v. State*, Del.Supr., 397 A.2d 540, 547 (1979) ("jury need only have found weapon physically available and accessible to defendant").

7. *See Kornbluth*, 580 A.2d at 560–61; *Wilson v. State*, Del.Supr., 343 A.2d 613, 618 (1975).

8. *Kornbluth*, 580 A.2d at 560.

*State,*[9] wherein this Court overturned a conviction for possession of a firearm during the commission of a felony. *Barnett,* however, is readily distinguishable on its facts. In *Barnett,* the police discovered the drugs in a backpack the defendant was carrying when apprehended on the street. They later found the firearm in a locked box inside defendant's apartment in a location not primarily under his control. The police found no drugs in Barnett's apartment. Even if the State could prove that the "locus" of Barnett's criminal enterprise was his apartment, the "evidence was insufficient to establish the physical accessibility and availability of the firearm during the commission of any predicate drug felony."[10] Unlike Childress, Barnett did not have ready access to his firearm.

Here, a rational fact finder could conclude that Childress kept the firearm in such close proximity to his drug inventory that it was in his possession during the commission of the felony of drug trafficking. There was thus ample evidence to support the jury's determination that Childress had immediate access to the firearm during the "continuing felony" of his drug-dealing operation, and it is irrelevant that the firearm was unloaded when it was found in the search.

### Comments to the Jury

Childress argues that the trial court denied him a fair trial by admonishing the jury that they should not "take more time than [they] need to reach proper verdicts based on the law and the evidence." Childress claims this sentence impliedly conveyed the judge's belief in his guilt, and therefore amounted to an impermissible comment on the evidence.[11] The Superior Court denied Childress' objection at trial, after convincing itself that the jury did not feel pressured to reach any particular verdict. We review *de novo* the trial court's comments to the jury to determine whether they were improper and require reversal.[12]

Although the comment in question was unnecessary and potentially problematic, it did not constitute constitutional error. Read as a whole, the court's comments were even-handed. They informed the jurors that the length of their deliberations was entirely within their discretion, and that they could take as much or as little time as they needed to reach a proper verdict. At no point during the trial did the trial court, directly or indirectly, convey the judge's personal belief of the defendant's guilt or innocence.

### Conclusion

We affirm the judgment of the Superior Court.

---

9. Del.Supr., 691 A.2d 614 (1997).

10. *Id.* at 619.

11. *See Wright v. State,* Del.Supr., 405 A.2d 685, 689 (1979) ("A Trial Judge has a duty 'to avoid any language or any conduct which would lead the jury to suspect that the judge is favorable to one party to the trial.' ") (quoting *Buckley v. R.H. Johnson & Co.,* Del.Super., 25 A.2d 392, 397 (1942)); *Del. Const.* art. IV, § 19.

12. *See Chance v. State,* Del.Supr., 685 A.2d 351, 354 (1996).