**Chaka MADDREY, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 533, 2008.

Supreme Court of Delaware.

Submitted: June 4, 2009.

Decided: June 15, 2009.

Bernard J. O'Donnell, Esquire, Office of the Public Defender, Wilmington, DE, for appellant.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, DE, for appellee.

Before HOLLAND, BERGER and RIDGELY, Justices.

HOLLAND, Justice:

The defendant-appellant, Chaka Maddrey, appeals from his convictions of Possession of a Firearm During the Commission of a Felony ("PFDCF") and Possession of a Deadly Weapon by a Person Prohibited ("PDWPP"). Following a jury trial in the Superior Court, Maddrey was convicted of Possession with Intent to Distribute Crack Cocaine,[1] Possession of Drug Paraphernalia,[2] Maintaining a Dwelling for Keeping Controlled Substances,[3] PFDCF[4] and PDWPP.[5]

In this direct appeal, Maddrey contends that the evidence was insufficient to convict him of PFDCF and PDWPP, because the two handguns recovered from the scene were not "physically available or accessible to him during the commission of the crime." Maddrey contends that the State failed to prove his "possession" of the firearms during the commission of the drug-related felonies because the search of his home was executed while he was not present and the handguns were found "in a locked safe on the top shelf of a bedroom closet."

This Court has concluded that the fact that a handgun is found in a locked container is not dispositive, but a factor for the jury to consider in determining accessibility. In Maddrey's case, the handguns were found in a locked safe in Maddrey's bedroom, the same room where the drugs and drug paraphernalia were located. Because the record reflects that the evidence was sufficient for a jury to reasonably infer that the handguns were available and accessible during the course of Maddrey's continuing felonies of Possession with Intent to Distribute Crack Cocaine and Maintaining a Dwelling for Keeping Controlling Substances, the judgment of the Superior Court must be affirmed.

### Facts and Procedural History

Following an investigation, the police obtained a warrant to search Maddrey's resi-

---

1. Del.Code Ann. tit. 16, § 4751.

2. Del.Code Ann. tit. 16, § 4771.

3. Del.Code Ann. tit. 16, § 4755(a)(5).

4. Del.Code Ann. tit. 11, § 1447A. Maddrey was convicted of one count of PFDCF and acquitted of one count of PFDCF.

5. Del.Code Ann. tit. 11, § 1448. Maddrey was convicted of two counts of PDWPP.

dence in January 2008. Police officers executed the warrant on January 25, 2008, and found a number of people inside the house, including a two-year-old child. In Maddrey's bedroom, the officers found two plastic bags of crack cocaine weighing 3.8 grams and .1 grams on top of a dresser and a third plastic bag of crack cocaine weighing .1 grams under a mattress. They also found a digital scale and Ziplock baggies commonly used to package drugs in a dresser drawer in Maddrey's bedroom.

On the top shelf of Maddrey's bedroom closet, the officers found a small, locked safe. They could not locate the key to the safe and, instead, pried it open with special hand tools. Inside the safe, the officers found approximately $2,000 in cash and two loaded handguns.

Maddrey was not home when the search warrant was executed, but he was arrested later that day and brought to the house. He agreed to be questioned and took responsibility for the drugs and paraphernalia found in his bedroom, saying that he had a drug problem. But, he claimed he had no knowledge of the safe on the top shelf of his bedroom closet. No key to the safe was found in the bedroom, in the house or on Maddrey's person. A computer search of the handguns' serial numbers indicated they had never been registered. A DNA test revealed Maddrey's DNA on the handguns.

On February 19, 2008, Maddrey was indicted on eight charges: one count of Possession with Intent to Deliver Crack Cocaine, one count of Possession of Drug Paraphernalia, one count of Maintaining a Dwelling for Keeping Controlled Substances, one count of Endangering the Welfare of a Child, and two counts each of PFDCF and PDWPP. The State later entered a *nolle prosequi* on the charge of Endangering the Welfare of a Child.

A two-day jury trial in the Superior Court commenced on August 5, 2008. At the close of evidence, Maddrey moved for a judgment of acquittal on the four weapons charges, arguing that the guns in the locked safe were not accessible to him. The trial judge denied the motion, ruling that "the accessibility of the firearms is a question of fact; it is appropriate for the jury." On August 6, 2008, Maddrey was convicted of all the charges except for one count of PFDCF.

On October 10, 2008, Maddrey was sentenced to a mandatory three years imprisonment at Level 5 on the PFDCF conviction. On the possession with intent to deliver conviction, Maddrey was sentenced to three years imprisonment at Level 5 suspended after six months for six months imprisonment at Level 3 and twelve months imprisonment at Level 2. On the remaining charges, Maddrey was sentenced to a cumulative six years imprisonment at Level 5 suspended for probation. This direct appeal followed.

### Insufficient Evidence Alleged

In this appeal, Maddrey contends that there was insufficient evidence for the trial judge to submit the charges of PFDCF and PDWPP to the jury, because the handguns were not "physically available or accessible to him during the commission of the crime." He asserts that the handguns were located in a locked safe on the top shelf of a closet, which had to be pried open by police officers using specialized tools. In addition, he asserts that he was not present during the search and that the police failed to recover any key to the safe from his bedroom, in his house or on his person.

### Standard of Review

■ We review the sufficiency of the evidence to support a conviction *de novo* to

determine whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the defendant guilty beyond a reasonable doubt.[6] Our review is guided by "the fundamental tenet of American jurisprudence that the jury is the sole trier of fact responsible for determining witness credibility, resolving conflicts in testimony and for drawing any inferences from the proven facts."[7]

## PFDCF Requires Physical Accessibility

Title 11, section 1447A of the Delaware Code provides that it is a felony to possess a firearm during the commission of a felony.[8] Like the related crime of Possession of a Deadly Weapon During the Commission of a Felony ("PDWDCF"), defined in title 11, section 1447,[9] the manifest purpose of section 1447A "is to discourage the

accessibility of a [firearm] during the commission of a crime, thus reducing the probability of serious harm to the victim."[10] We have previously noted, however, that "the automatic compounding of drug felonies through the use of section[s] 1447 [and 1447A] charges whenever a weapon is found in the general vicinity of a defendant charged with a drug-related felony is illogical and, as a matter of fundamental fairness, indefensible."[11]

■ Instead, the dispositive aspects of the term "possession" within the meaning of the statute are the elements of "availability" and "accessibility."[12] A felon is in "possession" of a firearm, within the meaning of section 1447A, "only when it is physically available or accessible to him during the commission of the crime."[13] "General 'dominion and control' of a weapon located elsewhere, and not reasonably

6. *Davis v. State*, 706 A.2d 523, 525 (Del.1998) (citing *McNulty v. State*, 655 A.2d 1214, 1216 n. 8 (Del.1995)); *Dixon v. State*, 567 A.2d 854, 857 (Del.1989) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

7. *Chao v. State*, 604 A.2d 1351, 1363 (Del. 1992) (citing *Pryor v. State*, 453 A.2d 98, 100 (Del.1982) (stating that the jury is the sole judge of a witness' credibility and is responsible for resolving conflicts in testimony); *State v. Matushefske*, 215 A.2d 443, 446 (Del.Super.Ct.1965) (stating that the determination of true facts and the drawing of any inferences from the proven facts are matters solely within the jury's province); *State v. Winsett*, 205 A.2d 510, 521 (Del.Super.Ct.1964) (stating that the degree of credit to be given to the evidence of a participant or accomplice is a matter exclusively within the province of the jury)).

8. Del.Code Ann. tit. 11, § 1447A ("A person who is in possession of a firearm during the commission of a felony is guilty of possession of a firearm during the commission of a felony. Possession of a firearm during the commission of a felony is a class B felony."). A "firearm" is defined as "any weapon from

which a shot, projectile or other object may be discharged by force of combustion, explosive, gas and/or mechanical means, whether operable or inoperable, loaded or unleaded." Del.Code Ann. tit. 11, § 222(12).

9. Del.Code Ann. tit. 11, § 1447 ("A person who is in possession of a deadly weapon during the commission of a felony is guilty of possession of a deadly weapon during the commission of a felony. Possession of a deadly weapon during the commission of a felony is a class B felony.").

10. *Mack v. State*, 312 A.2d 319, 322 (Del. 1973) (interpreting title 11, section 468A of the Delaware Code, the predecessor to section 1447A, which was enacted in 1994); *see Barnett v. State*, 691 A.2d 614, 618 (Del.1997).

11. *Gardner v. State*, 567 A.2d 404, 413–14 (Del.1989).

12. *Mack v. State*, 312 A.2d at 322 (explaining that the word "possession," as used in the applicable statutes, "requires the elements of availability and accessibility").

13. *Id.*

accessible to the felon, obviously is not the test under [section 1447A]." [14] Accordingly, the fact that the firearm is kept apart from the locus of the underlying felony can negate "the required evidentiary nexus of physical accessibility between the weapon and [the defendant's] engaging in the underlying felony of drug [possession]." [15]

 Unlike crimes such as robbery and burglary, which tend to begin and end over a definite, usually short, period of time, drug-related crimes such as possession with intent to distribute are "continuing" felonies.[16] Therefore, actual possession of the firearm at the time of arrest, or the defendant's physical presence near the firearm at the time of arrest, is not necessary. Accordingly, we have looked to the weapon's proximity to the drugs or drug paraphernalia.[17] "[W]here (as here) the police discover a firearm next to a quantity of drugs sufficient to constitute a felony, the law permits the jury to infer that the gun was accessible to the defendant at some point during the transaction for purposes of [section] 1447A." [18]

### Prior PFDCF Precedents

 In *Mack v. State*, while searching the defendant's apartment with the defendant present, the police seized a quantity of heroin, certain drug paraphernalia and a loaded automatic revolver.[19] The firearm was found in the defendant's bedroom in a chest of drawers near the dresser in which the drugs and paraphernalia were found.[20] We held that under those facts, the bedroom was the locus of the defendant's continuing drug felony and the revolver's presence there satisfied the accessibility test.[21]

Similarly, in *Lewis v. State*, the police searched the defendant's mobile home and seized evidence of drug trafficking from the bedroom and the kitchen and a loaded shotgun from an unlocked gun cabinet in the living room.[22] We determined that the evidence supported a finding that the locus of the drug activity was the entire mobile home.[23] Thus, the firearm was "available" during the course of the continuing felony.[24]

Likewise, in *Kornbluth v. State*, while searching the defendant's home without the defendant present, police officers

14. *Id.*

15. *Gardner v. State*, 567 A.2d at 414.

16. *See Childress v. State*, 721 A.2d 929, 931 (Del.1998) (explaining that "a drug-sale operation is a 'continuing felony' the 'locus' of which is wherever the defendant keeps his contraband") (citing *Kornbluth v. State*, 580 A.2d 556, 560–61 (Del.1990)); *see also Wilson v. State*, 343 A.2d 613, 618 (Del.1975).

17. *Childress v. State*, 721 A.2d at 931–32; *Wilson v. State*, 343 A.2d at 618.

18. *Childress v. State*, 721 A.2d at 931 (citing Del.Code Ann. tit. 11, § 1447A).

19. *Mack v. State*, 312 A.2d 319, 320 (Del. 1973).

20. *Id.*

21. *Id.* at 322.

22. *Lewis v. State*, 1990 WL 38306, at *1 (Del. Supr. Mar. 19, 1990).

23. *Id.*, at *4.

24. *Id.*, at *3–4; *see Childress v. State*, 721 A.2d at 930–32 (holding evidence was sufficient to support conviction for PFDCF where defendant was arrested immediately outside his residence and an unloaded handgun was found in the residence, under the defendant's bed and in the same room as the controlled substances and cash); *Wilson v. State*, 343 A.2d at 618 (holding evidence was sufficient to support conviction for PFDCF where a loaded rifle and loaded handgun were found less than twenty-five feet from the place where the drugs were discovered).

seized twenty-five bags of marijuana, drug paraphernalia and a loaded shotgun.[25] Most of the marijuana was recovered from the living room, as was the shotgun, which was found behind the living room sofa.[26] We concluded that the fact that the defendant was not present in the house when the drugs and weapons were found was not relevant to the accessibility requirement.[27] We also held that because the living room was clearly the locus of the drug activity and both the drugs and firearm were discovered within easy reach of someone sitting on the sofa, the accessibility test was met.[28]

In contrast, in *Gardner v. State,* the defendant was arrested outside of his home for trafficking in cocaine.[29] When the police searched his three-story residence, they found cocaine and drug paraphernalia in the basement and first-floor living room and deadly weapons in a second-floor bedroom.[30] Under those facts, where the gun was found in a different room and on a different floor from the drugs and paraphernalia, we held, as a matter of law, that the evidence did not support a conviction for PDWDCF, because there was no evidence that the deadly weapon was accessible during the commission of the crime.[31]

The facts of Maddrey's case are more like *Mack, Lewis* and *Kornbluth* than

*Gardner.* Like those cases, and unlike *Gardner,* the drugs, paraphernalia and firearms were all found in Maddrey's bedroom. No other evidence of drug activity was discovered elsewhere in the house and the evidence supports the logical inference that the bedroom was the locus of Maddrey's drug activity. As we noted in *Kornbluth,* it is not relevant that Maddrey was not present at the time of the search, as possession with intent to distribute is a continuing felony.[32] Accordingly, the location of the firearms at the locus of the drug activity made the firearms accessible during the commission of the felony.[33]

### Redding and Barnett

■ Maddrey argues that his case is distinguishable from *Mack, Lewis* and *Kornbluth* because the handguns in his case were located in a locked safe for which no key was found. Maddrey relies on our decisions in *Redding v. State*[34] and *Barnett v. State*[35] to support this distinction.

In *Redding,* the defendant stole a locked safe box during a burglary.[36] He knew there was a gun inside the safe box.[37] While the defendant was fleeing from the burglarized residence, he broke open the safe box and used the gun to steal a bicy-

---

25. *Kornbluth v. State,* 580 A.2d 556, 557–58 (Del.1990).

26. *Kornbluth v. State,* 580 A.2d at 558.

27. *Id.* at 560–61.

28. *Id.* at 561.

29. *Gardner v. State,* 567 A.2d 404, 413 (Del. 1989).

30. *Id.*

31. *Id.* at 413–14.

32. *Kornbluth v. State,* 580 A.2d at 560–61.

33. *See Mack v. State,* 312 A.2d 319 (Del.1973); *Lewis v. State,* 1990 WL 38306 (Del.Supr. Mar. 19, 1990); *Kornbluth v. State,* 580 A.2d 556 (Del.1990).

34. *Redding v. State,* 2003 WL 22214027 (Del. Supr. Sept. 23, 2003).

35. *Barnett v. State,* 691 A.2d 614 (Del.1997).

36. *Redding v. State,* 2003 WL 22214027, at *1.

37. *Id.,* at *1.

cle.[38] Although the issue we addressed in that case was whether the burglary was still in progress when the defendant used the gun to steal the bicycle, we noted that "the gun was not readily available to [the defendant] while effectuating the burglary."[39] Thus, the gun became available only when the defendant opened the safe box during his immediate flight from the burglary.[40] This passing reference to availability would seem to support Maddrey's argument; however, we conclude that *Barnett* more directly addresses the issue of availability and controls in this case.

Our decision in *Barnett*, which directly addressed the issue of availability, indicates that the fact that a firearm is kept in a locked container is just one of many factors to be considered in a PFDCF case, when applying the accessibility test.[41] In that case, the defendant lived in an apartment with his stepmother and shared a bedroom with her two minor sons.[42] Upon searching the apartment, police officers found drug paraphernalia in a locked safe in the bedroom closet and a firearm in a locked strongbox in a hallway linen closet.[43] The police did not find a key to the strongbox.[44]

In *Barnett*, after reviewing our previous decisions, including *Mack, Lewis, Kornbluth*, and *Gardner*, we explained that the facts were more similar to *Gardner*, where the gun was not found at the locus of the drug activity, than to *Kornbluth* and *Lewis*.[45] We noted that the apartment belonged to the defendant's stepmother and no drugs were found there at all.[46] We also noted that the firearm was found inside a locked stongbox in a hallway linen closet, rather than in the defendant's bedroom.[47] Based on all of these factors, we held that "[t]he record evidence does not support a finding that the firearm ... was available and accessible to [the defendant] *during* the commission of any felonious drug activity."[48] Our decision did not turn on the single fact that the gun was locked in a strongbox.

### PFDCF Evidence Sufficient

Our holding in *Barnett* stands for the proposition that the fact that a firearm is kept in a locked container, for which no key is readily available, is a factor to be considered, along with all other factors, in determining accessibility; but it is not in and of itself dispositive.[49] In this case, the police officers executing the search found the two handguns in a locked safe. Just because no key was recovered from the house or Maddrey during the search does not mean that one did not exist. Moreover, unlike *Barnett*, the safe with the firearms was found, along with the drugs

**38.** *Id.*

**39.** *Id.* at *2.

**40.** *Id.*

**41.** *Barnett v. State*, 691 A.2d 614 (Del.1997).

**42.** *Barnett v. State*, 691 A.2d at 615–16.

**43.** *Id.* at 616.

**44.** *Id.*

**45.** *Id.* at 617–18.

**46.** *Id.* at 618.

**47.** *Id.*

**48.** *Id.* (citing *Gardner v. State*, 567 A.2d at 413; *Mack v. State*, 312 A.2d at 322).

**49.** As the State points out, federal courts have held that the locked glove box of an automobile is sufficiently accessible to justify a search under *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). *See United States v. Palmer*, 360 F.3d 1243, 1247–48 (10th Cir.2004) (collecting cases).

and paraphernalia, in Maddrey's bedroom, the locus of his illegal drug activity.

In addition, the guns were found loaded, along with $2,000 in cash. Under these circumstances, the evidence was sufficient for the jury to reasonably infer that the guns were accessible and available during the course of Maddrey's continuing felonies of Possession with Intent to Distribute Crack Cocaine[50] and Maintaining a Dwelling for Keeping Controlled Substances.[51] Accordingly, the evidence was sufficient to support his conviction of PFDCF under section 1447A.[52]

### PDWPP Evidence Sufficient

■ Maddrey uses the same accessibility arguments to support his contention that the evidence was insufficient to convict him of PDWPP pursuant to title 11, section 1448.[53] Even if we had concluded that the evidence in this case was insufficient to support Maddrey's conviction for PFDCF, that conclusion would not control the outcome of his conviction for PDWPP.

Although we noted in *Barnett* that "[t]he term possession, as it is used in both section 1447A and section 1448, means physically available and accessible to the defendant,"[54] we recognized in *Miller v. State* that the critical distinction between the two crimes is that physical availability during the commission of a felony is not required to establish a section 1448 violation.[55]

Unlike section 1447A, "section 1448(a) makes it a crime for a prohibited person to possess a weapon or ammunition *at any time*. Therefore, under section 1448(a), the State need only prove that a defendant possessed or controlled a weapon at some point, not necessarily at the time of his arrest."[56] Where, as here, the handguns were recovered from a locked safe in the defendant's bedroom, the evidence was sufficient for the jury to infer that the handguns were available and accessible to Maddrey, regardless of whether they were available and accessible during the commission of his continuing drug felonies.[57]

50. Del.Code Ann. tit. 16, § 4751.

51. Del.Code Ann. tit. 16, § 4755(a)(5).

52. Del.Code Ann. tit. 11, § 1447A.

53. Del.Code Ann. tit. 11, § 1448(a) ("Except as otherwise provided herein, the following persons are prohibited from purchasing, owning, possessing or controlling a deadly weapon or ammunition for a firearm within the State: (1) Any person having been convicted in this State or elsewhere of a felony; ... [or] (3) Any person who has been convicted for the ... possession or sale ... of a narcotic drug or controlled substance as defined in Chapter 47 of Title 16"). Maddrey was convicted of the felony offense of Possession with Intent to Deliver a Non–Narcotic Schedule I Substance on January 7, 2004. Del.Code Ann. tit. 16, § 4752.

54. *Barnett v. State*, 691 A.2d at 619 (citing *Sexton v. State*, 397 A.2d 540 (Del.1979); *Mack v. State*, 312 A.2d 319 (Del.1973)).

55. *Miller v. State*, 2005 WL 1653713, at *3 (Del.Supr. July 12, 2005) (citing *United States v. Brown*, 125 Fed.Appx. 51 (7th Cir.2005); *United States v. Broadie*, 116 Fed.Appx. 452 (4th Cir.2004); *United States v. Williams*, 110 Fed.Appx. 638 (6th Cir.2004)).

56. *Id.*

57. *Cf. Lewis v. State*, 1990 WL 38306, at *1–2 (Del.Supr. Mar. 19, 1990) (sustaining a conviction of possession with intent to deliver cocaine where the drugs and paraphernalia were recovered from a locked safe, although not expressly addressing the fact that the drugs were in a locked safe and instead focusing on the whether the evidence was sufficient to support a conviction for delivery); *State v. Gregory*, 1991 WL 165936, at *2 (Del.Super.Ct. Aug. 13, 1991) (finding the evidence sufficient to support a conviction for possession of drugs where the defendant was found in the room where the drugs were locked in a safe and the defendant had a key to the safe).

## Conclusion

The judgments of the Superior Court are affirmed.