IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| YANIQUE RANIFORD, | § | |
| | § | No. 199, 2016 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID. Nos. 1302000010 and |
| STATE OF DELAWARE, | § | 1301021343 |
| | § | |
| Plaintiff-Below, | § | |
| Appellee. | § | |

Submitted: November 2, 2016
Decided: November 16, 2016

Before **STRINE**, Chief Justice; **HOLLAND**, and **SEITZ**, Justices.

## ORDER

This 16th day of November, 2016, having considered the briefs and the record below, it appears to the Court that:

(1) Yanique Rainford appeals his convictions from two separate trials, before two different judges. The underlying incidents have no relation to each other, but both occurred in January 2013. On January 16, 2013, Rainford was involved in a high speed car chase. Police did not immediately apprehend him. On January 31, 2013, an undercover police officer arranged for Rainford to deliver heroin to him at the Dutch Inn in New Castle. Police arrested him and charged him with crimes related to both incidents. After two separate Superior Court trials,

juries convicted him of all charges related to both incidents. On appeal, Rainford alleges various errors occurred at his two trials. We find his arguments to be without merit, and affirm.

(2) On January 16, 2013, several detectives of the New Castle County Police Department set up a surveillance team to investigate a complaint about a man dealing drugs outside of the R&C Deli in New Castle, Delaware. Tipsters had informed the police that each day a black man in a black Oldsmobile Bravada with a Delaware registration of PC 426717 would arrive at the deli at 4:00 p.m. and sell drugs out of the car.

(3) At 4:25 p.m., the detectives saw a man, who they later identified as Rainford, pull up to the deli in a car matching the description from the tipster. Rainford had a passenger in the car. Detective Peter Stewart saw two men approach Rainford's car. He activated the car's emergency lights and pulled behind the car. When Detective Stewart approached the driver's side of the car, Rainford drove away. Detective Stewart ordered him to stop, but Rainford sped away through a yard towards I-495 headed northbound.

(4) Detective Thomas Bruhn chased after Rainford. Rainford ran stop signs and sped onto the highway. Police eventually abandoned the chase in the interest of public safety, but located the car a few minutes later on Davis Street in

2

Wilmington. A concerned passerby told the police that he had seen two men fleeing from the car and described their appearance.

(5) The car Rainford was driving was registered to his girlfriend, Calina Cornish. The detectives went to Cornish's home, and she consented to a search of the residence. Police found male clothing and Rainford's pay stubs in the house. They also found Rainford's fingerprints on the driver's side window of the car. Cornish told police that Rainford had two cell phones and provided them with the phone numbers. Police arrested Rainford on January 31, 2013. On May 6 and 7, 2014, the State tried Rainford on charges of disregarding a police officer's signal, resisting arrest, and aggressive driving. A Superior Court jury found him guilty of all charges.

(6) Rainford was involved in another police investigation shortly after the car chase. The New Castle County Police Department had received a tip from a confidential informant that Rainford was selling heroin. Detective Stewart, acting undercover, contacted him asking to purchase heroin. On January 31, 2013, he arranged for Rainford to deliver the heroin to him at the Dutch Inn in New Castle.

(7) Franklin Hanna drove Rainford to the hotel. He had bought heroin from Rainford earlier in the day, and Rainford asked if he would take him to the Dutch Inn. Hanna "assumed" Rainford was going to sell drugs, but agreed to drive him there anyway. Hanna parked the car in front of the hotel room and Rainford

3

exited the car. Police arrested Rainford before he approached the hotel room. The police found forty-nine bags of heroin, $160 cash, and two cell phones on Rainford. The cell phone numbers matched the numbers that Cornish had given the police in the earlier investigation. Hanna also had thirteen bags of heroin on him. All of the bags of heroin had a brand stamp of "BANG" on them. Police also found $681 in cash and a digital scale when they searched Rainford's home. After Hanna was arrested, he was Mirandized and gave a statement to the police. The police videotaped that statement.

(8) On November 13 and 14, 2014, the State tried Rainford on charges of drug dealing heroin, conspiracy second degree, possession of marijuana, and possession of drug paraphernalia. A Superior Court jury found him guilty of all charges. The Superior Court sentenced Rainford for both incidents on April 8, 2016. As to the January 16 incident, the court sentenced him to two years at Level V incarceration, suspended after one year for decreasing levels of supervision for disregarding a police officer's signal; one year at Level III probation for resisting arrest; and a fine of $500 for aggressive driving. As to the January 31 incident, the court sentenced him to fifteen years at Level V incarceration, suspended after eight years for decreasing levels of supervision for drug dealing; two years at Level V incarceration, suspended after one year for Level III probation for conspiracy second degree; three months Level III probation for possession of marijuana; and

six months at Level III probation and a $1,150 fine for possession of drug paraphernalia. This appeal followed.

(9) Rainford raises three issues on appeal. First, he argues that in his trial related to the January 31 controlled sale, the Superior Court abused its discretion by admitting Hanna's videotaped statement. At trial, the State asked Hanna about his statement to police. Hanna said he could not remember what he told the police, that he did not give the statement voluntarily, and that he could not verify that the statement was accurate. The State then moved to introduce his videotaped statement into evidence in accordance with 11 *Del. C.* § 3507. The Superior Court granted the motion. This Court reviews "the Superior Court's admission of an out-of-court statement for abuse of discretion."[1]

(10) Under 11 *Del. C.* § 3507, "[i]n a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value." We recently set forth the steps that must be taken before a witness's prior statement can be introduced using § 3507.[2] Here, we address the voluntariness of the statement. If the voluntariness of a witness's out-of-court

---

[1] *Turner v. State*, 5 A.3d 612, 615-16 (Del. 2010).
[2] *State v. Flowers*, __ A.3d __, 2016 WL 6196304, at *4 (Del. Oct. 21, 2016).

5

statement is at issue, the trial judge must review the circumstances surrounding the statement to assess its voluntariness before the statement can be heard by the jury.[3]

(11) Hanna denied on the stand that his statement was voluntary. In response, the Superior Court reviewed the circumstances surrounding the videotaped statement. The court determined that the statement was voluntary because "the procedural safeguards of *Miranda*[4] were provided and [Hanna] understood them," and that he could refuse to make a statement if he so chose.[5] Further, the court found that although Hanna could not remember his statement, he did remember the incident and giving a statement, thereby satisfying the requirements of § 3507.

(12) We agree with the Superior Court's decision. Hanna gave a statement just a few hours after his arrest. He was properly Mirandized, and the entire interview was about ten minutes long. He was not handcuffed, and does not appear to have been exhausted or intoxicated. The Superior Court evaluated the circumstances surrounding the statement, found that the statement was voluntary, and properly admitted Hanna's statement.

(13) Rainford next argues that the State failed to present sufficient evidence to convict him of the charge of conspiracy second degree. "We review

---

[3] *Woodlin v. State*, 3 A.3d 1084, 1087 (Del. 2010) (citing *Hatcher v. State*, 337 A.2d 30, 32 (Del. 1975).

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[5] App. to Opening Br. at 131.

the sufficiency of the evidence to support a conviction *de novo* to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the defendant guilty beyond a reasonable doubt."[6]

(14)   At trial, Hanna denied knowing why he was giving Rainford a ride to the hotel.  But in his videotaped statement, Hanna said that he "assumed" Rainford was going to sell drugs.  Under 11 *Del. C.* § 512:

> A person is guilty of conspiracy in the second degree when, intending to promote or facilitate the commission of a felony, the person . . . agrees to aid another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony; and the person or another person with whom the person conspired commits an overt act in pursuance of the conspiracy."[7]

(15)   Viewing the evidence in the light most favorable to the State, a jury could find beyond a reasonable doubt that Rainford and Hanna conspired to commit the felony of drug dealing.  Rainford asked Hanna to drive him to the Dutch Inn.  Although he did not tell Hanna that he was going to sell drugs, Hanna said that he "assumed" Rainford was going to sell them.  He knew that Rainford was a drug dealer, and in fact, Hanna had just bought heroin from Rainford before driving him to the Dutch Inn.  With that knowledge, Hanna agreed to drive

---

[6] *Maddrey v. State*, 975 A.2d 772, 774-75 (Del. 2009).
[7] 11 *Del. C.* § 512.

Rainford to the hotel. Based on the surrounding circumstances, a reasonable juror could find Rainford guilty of the crime of conspiracy second degree.

(16) Finally, Rainford argues that in his trial related to the January 16 car chase, the Superior Court erred by failing to grant a mistrial after the State's allegedly improper opening argument. This Court reviews the trial court's refusal to grant a mistrial after allegedly improper opening statements for abuse of discretion.[8] We review claims of error not raised below only for plain error.[9] To be plain, "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process . . . and is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[10]

(17) Rainford challenges three of the prosecutor's statements. He first argues that the prosecutor improperly alluded to his involvement in drug activity. He claims that the prosecutor's statement that there were "complaints of drug activity in the area" was improper because the complainants never testified at trial.[11] He also argues that the prosecutor improperly mentioned that the police

---

[8] *Gattis v. State*, 637 A.2d 808, 819 (Del. 1994).
[9] *Baker v. State*, 906 A.2d 139, 150 (Del. 2006).
[10] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[11] It is unclear whether Rainford challenges the prosecutor's statement because the complainants never testified at trial or because the statement implied he was involved in drug activity. *See* Opening Br. at 14:

saw two people approach Rainford's car which gave the jury the impression that a drug transaction was underway. Rainford did not raise either of these issues below. Therefore, we review only for plain error.[12]

(18) It is improper for a prosecutor to discuss evidence in opening argument for which there is no good faith and reasonable basis to believe will be tendered and admitted in evidence.[13] Nevertheless, "[e]ven if we assume that the prosecutor's remark was improper, reversal of [Rainford's] convictions is required only if the remark prejudicially affected [his] substantial rights."[14] In determining whether the prosecutor's statements require a mistrial, this Court must examine (1) the closeness of the case; (2) the centrality of the issue affected by the alleged error; and (3) the steps taken to mitigate the effects of the error.[15]

(19) Rainford appears to argue that it was improper for the prosecutor to discuss in opening statements the complaints about drug activity in the area because the complainants never testified at trial. Although the complainants never testified at trial, Detective Bruhn testified about the complaints and Rainford did

---

The State's opening arguments to the jury indicated that the case, involving the car chase, involved drug activity. The first suggestion was that there were "complaints of general drug activity in that area… associated with an Oldsmobile Bravada". [sic] These were obvious reference [sic] to hearsay statements. The people who allegedly made the complaints never testified at trial. The State next claimed that after the Oldsmobile pulled into the driveway two people approached the vehicle, again giving the impression the drugs transactions were underway.

[12] *Baker*, 906 A.2d at 150.
[13] *Hughes v. State*, 437 A.2d 559, 567 (Del. 1981).
[14] *Leacock v. State*, 690 A.2d 926, 928 (Del. 1996).
[15] *Hughes*, 437 A.2d at 571.

not object to the detective's reference to them. The prosecutor therefore had a good faith basis to believe the evidence would be admitted, supported by the fact that the statement was actually admitted.

(20) If Rainford is challenging the prosecutor's reference to "complaints of drug activity in the area" based on the fact that it implied guilt by association, a mistrial still was not required because he was not prejudiced by the statement. The statement was proper background information and not indicative of his guilt. Further, the case was not close. Police found Rainford's fingerprints on the driver's side window of the car. They found his cell phone in the driver's side door of the car. Detective Stewart identified him as the man he approached. Additionally, the statement was not central to the case and only provided a brief background into the reason why the police approached Rainford's car. Further, the statements were presented during opening arguments, and the trial judge explained that the jury should not treat opening arguments as evidence. Therefore, the Superior Court did not plainly err by failing to declare a mistrial.

(21) Rainford next challenges the prosecutor's reference to the police officer's description of Rainford. During opening statements, the prosecutor said that the officer saw a heavy-set black male with a beard wearing dark clothing driving the car. A review of the record shows that at trial, Detective Stewart did

not describe Rainford's appearance.[16] Rather, he just identified Rainford as the man driving the car.[17] But, even if the prosecutor should not have referred to facts that did not end up in evidence, the prosecutor's statement does not rise to the level of affecting Rainford's substantial rights. As noted above, this was not a close case. Further, although the issue of identification was central to the case, the details of Rainford's appearance were not. Finally, the Superior Court instructed the jury that opening statements are not evidence, sufficiently mitigating any potential prejudice.

(22) Finally, Rainford argues that the prosecutor should not have mentioned that a concerned passerby described Rainford to the police because the passerby never testified at trial and the fact was never made part of the record. Rainford's argument is without merit. The prosecutor had a good faith basis to believe the passerby's statement to police would be admissible at trial through one of the detectives. Although hearsay statements are generally inadmissible, present sense impression and excited utterance are both well recognized exceptions to the prohibition against hearsay.[18] Under D.R.E. 803(1), a present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Under

---

[16] App. to Opening Br. at 49.
[17] *Id.*
[18] *Urquhart v. State*, 133 A.3d 981, 2016 WL 768268, at *2 (Del. 2016) (Table).

11

D.R.E. 803(2), an excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

(23) In *Urquhart v. State*, this Court held that an unidentified woman's non-testimonial statement to police describing a fleeing suspect's appearance and direction of travel qualified as both a present sense impression and an excited utterance. This case is directly analogous to *Urquhart* because the passerby simply reported the description of the two individuals after observing them run away from police after a high speed chase.

(24) Further, even if the prosecutor did err by repeating the passerby's statement, the comment did not affect Rainford's substantial rights. As explained previously, this case was not close, the issue was not central to the case, and the Superior Court instructed the jury that opening statements are not evidence. Therefore, the Superior Court did not abuse its discretion by declining to grant a mistrial.

NOW, THEREFORE, it is hereby ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

12