IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANNQUASIA WATSON, | § | |
| | § | No. 237, 2024 |
| Defendant Below, | § | |
| Appellant, | § | Court Below–Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 2206005032 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: March 10, 2025
Decided: May 6, 2025

Before **VALIHURA**, **TRAYNOR**, and **LEGROW**, Justices.

## <u>ORDER</u>

After consideration of the no-merit brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26(c), the State's response, and the Superior Court record, it appears to the Court that:

(1)    In February 2023, a Superior Court grand jury indicted the appellant, Annquasia Watson, on two counts of possession of a firearm by a person prohibited ("PFBPP"), one count of PFBPP while in possession of a controlled substance, one count of possession of marijuana, and one count of possession of ammunition by a person prohibited ("PABPP").

(2)    The State called three witnesses at trial: Wilmington Police Department ("WPD") Detective Leonard Moses; Gerald Nagowski, a ballistics officer for the

WPD, and Paul Gilbert, a scientist for the Division of Forensic Science. Detective Moses testified that the WPD opened a firearms investigation in April 2022 involving Apartment 3 of 103 East 30th Street, Wilmington, Delaware ("Apartment 3"). Although Watson was not initially a target of the investigation, she became one after officers observed her coming and going from Apartment 3, carrying groceries and laundry, removing trash, and otherwise acting in a manner that led the officers to believe that she resided in the apartment.

(3) In mid-May, officers obtained a warrant to search Apartment 3. When they arrived to execute the search warrant on May 17, Watson was seated in a brown Ford Fusion parked in front of the stairwell to Apartment 3. During the execution of the search warrant, officers found a loaded Taurus 9 mm firearm, a bag of marijuana, bank paperwork with Watson's name on it, female clothing, and a loaded Kimber Micro 9 mm firearm in the bedroom that they believed to be Watson's. Watson was not immediately charged for any crime because Detective Moses was hopeful that she would provide the WPD with information related to an ongoing investigation, and Detective Moses acknowledged that he expressed frustration with Watson's failure to do so when he encountered Watson ten days later on May 27.

(4) Detective Moses sent the firearms to the Evidence Detection Unit for testing, intending to have the firearms tested for operability as well as DNA and fingerprint evidence. Detective Moses failed, however, to fill out the preprinted

2

request form correctly. The firearms were test-fired for operability but were not tested for forensic evidence. When Detective Moses realized his error, he resubmitted the request form, asking for the firearms to be tested for fingerprints and swabbed for DNA. No fingerprints were recovered from either firearm. The swabs taken from the Taurus firearm produced mixed DNA profiles consistent with a mixture of at least three individuals, at least one of whom was male; the swab taken from the trigger of the Kimber firearm produced a DNA profile consistent with a mixture of two individuals, with the DNA profile of the major contributor matching Watson's DNA profile.

(5) At the close of its case, the State submitted a stipulation signed by the parties acknowledging that Watson is a person prohibited by Delaware law from possession or controlling a firearm, deadly weapon, or ammunition. Watson elected not to testify, and the defense rested. Over the State's objection, the Superior Court granted Watson's request for a missing-evidence instruction and instructed the jury that the State had failed to preserve evidence from the firearms when they were initially collected and that the State's failure to do so entitled Watson to an inference that the missing evidence was exculpatory.

(6) The jury found Watson guilty of the charges related to the Kimber firearm—one count of PFBPP and PABPP—but acquitted her of charges related to

3

the Taurus firearm—the remaining PFBPP charges.[1]  The Superior Court deferred sentencing pending the preparation of a presentence investigation report. Immediately before sentencing, Watson filed, *pro se*, a motion for judgment of acquittal.  Although Superior Court Criminal Rule 47 generally prohibits the court from considering *pro se* applications by defendants represented by counsel, the court considered the merits of Watson's motion and denied it.  The Superior Court then sentenced Watson to an aggregate of five years of unsuspended incarceration, followed by decreasing levels of supervision.  This appeal followed.

(7)     On appeal, counsel has filed a brief and a motion to withdraw under Rule 26(c).  Counsel asserts that, after a complete and careful examination of the record, he could not identify any arguably appealable issues.  Counsel informed Watson of the provisions of Rule 26(c) and provided her with a copy of the motion to withdraw and a draft of the accompanying brief.  Counsel also informed Watson of her right to supplement her attorney's presentation.  Watson has raised issues for the Court's consideration, which counsel attached to the Rule 26(c) brief.  The State has responded to the Rule 26(c) brief and has moved to affirm the Superior Court's judgment.

(8)     The standard and scope of review applicable to the consideration of a motion to withdraw and an accompanying brief under Rule 26(c) is twofold.  First,

---

[1] Before trial, the State dismissed the possession-of-marijuana charge.

4

the Court must be satisfied that defense counsel has made a conscientious examination of the record and the law for claims that could be arguably raised on appeal.[2] Second, the Court must conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[3]

(9) Watson has submitted 22 enumerated "points for consideration." Her arguments may be fairly summarized as follows: (i) the evidence was insufficient to support her convictions; (ii) Officer Moses was not a credible witness and perjured himself; (iii) the State violated its obligation under *Jencks v. United States*;[4] and (iv) trial counsel was ineffective. After careful review, we find no merit in Watson's arguments.

(10) In support of her argument that the evidence was insufficient to sustain her convictions, Watson argues, among other things, that "[t]he location of my possessions in the same area as the firearm is not sufficient to establish that I knew the location of the firearms," and that her case is similar to *State v. Deputy*,[5] where the Superior Court found that the evidence was insufficient to support a finding of constructive possession and granted the defendant's motion for judgment of

---

[2] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wis.*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).

[3] *Penson*, 488 U.S. at 81-82.

[4] 353 U.S. 657 (1957).

[5] 2019 WL 1504049, at *2 (Del. Super. Ct. Apr. 4, 2019).

acquittal.[6]  We review the sufficiency of the evidence to support a conviction *de novo* to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt.[7]  Our review is guided by "the fundamental tenet of American jurisprudence that the jury is the sole trier of fact responsible for determining witness credibility, resolving conflicts in testimony and for drawing any inferences from the proven facts."[8]  To prove that a defendant had constructive possession of a firearm, the State must show that the defendant "(i) knew the location of the gun; (ii) had the ability to exercise dominion and control over the gun; and (iii) intended to exercise dominion and control over the gun."[9]

(11)  Here, the record does not support Watson's claim that the evidence was insufficient to support her convictions related to the loaded Kimber firearm.  The evidence presented at trial showed, among other things: (i) over a several-week period, surveilling officers had observed Watson conducting routine household chores as she came and went from Apartment 3; (ii) Watson was outside Apartment 3 when the search warrant was executed; (iii) the police found female clothing and paperwork addressed to Watson in a bedroom in Apartment 3; (iv) the police found

---

[6] Opening Br., Ex. A.

[7] *Maddrey v. State*, 975 A.2d 772, 774-75 (Del. 2009).

[8] *Id*. at 775 (citations omitted).

[9] *Triplett v. State*, 2014 WL 1888414, at *2 (Del. May 9, 2014).

a loaded Kimber firearm in the bedroom's closet; (v) Watson's DNA profile matched that of a major contributor to the swab taken from the trigger of the Kimber firearm; and (vi) Watson is a person prohibited under Delaware law from possessing a firearm.

(12) Watson's reliance on *Deputy* is misplaced. There, the State relied merely on the presence of the defendant's possessions near the firearm to establish constructive possession. But there was no evidence that Deputy had been in the apartment when the firearm was present, there was minimal evidence tying him to the apartment, and, notably, there was no DNA evidence linking him to the firearm. Here, we find that the State presented sufficient evidence upon which a rational jury could rely to find that Watson constructively possessed the Kimber firearm and was therefore guilty of PFBPP and PABPP.[10] We also note that the jury, which acquitted Watson of charges involving the Taurus firearm, apparently gave great weight to the State's forensic evidence and little, if any, weight to the circumstantial evidence that arguably supported a finding that Watson constructively possessed *both* firearms.

(13) Watson cites portions of Officer Moses's testimony that she believes are inconsistent and argues that Officer Moses's "credibility is shot."[11] The record

---

[10] 11 *Del. C.* § 1448(b) ("Any prohibited person as set forth in subsection (a) of this section who knowingly possesses, purchases, owns or controls a deadly weapon or ammunition for a firearm while so prohibited shall be guilty of possession of a deadly weapon or ammunition for a firearm by a person prohibited.").

[11] Opening Br., Ex. A.

7

reflects that trial counsel highlighted the discrepancies in Officer Moses's testimony that Watson cites. To the extent that Watson has personal knowledge that Officer Moses misrepresented or lied about his interactions with her, Watson chose not to challenge his testimony personally. And to the extent that the jury found Officer Moses's testimony credible, we will not set aside that determination because we "recognize that it is the sole province of the fact finder to determine witness credibility, resolve conflicts in testimony and draw any inferences from the proven facts."[12]

(14) Watson next argues that the State failed to disclose evidence in violation of its discovery obligation under *Jencks*, which requires the government to provide to the defense prior recorded statements of its witnesses "touching the subject matter of their testimony at trial," but only after the witness has testified on direct examination.[13] Watson's argument is premised on her belief that the State did not disclose footage from the body camera Officer Moses was wearing when he and she interacted on May 27—footage that Watson believes would have contradicted his testimony at trial. The existence of that body camera footage was discovered by the State on the eve of trial and discussed by the parties at a November 27, 2023 pre-trial conference. At the time of the conference, the prosecutor had not yet reviewed

---

[12] *Poon v. State*, 880 A.2d 236, 238 (Del. 2005).
[13] *Jencks*, 353 U.S. at 672; *see also* 18 U.S.C. §3500.

8

the recordings but admitted that they might contain discoverable material and committed to delivering them to trial counsel if they did so. And it is clear from trial counsel's cross-examination of Officer Moses at trial that the State did, in fact, turn over the body camera footage discussed at the office conference before the case eventually proceeded to a jury trial in February 2024.[14] That is, the record does not support a finding that the State violated its discovery obligation under *Jencks*.

(15) Finally, Watson argues that trial counsel's performance was deficient. Ineffective-assistance-of-counsel claims are generally not cognizable on direct appeal,[15] and we see no reason to depart from that general rule here.

(16) The Court has reviewed the record carefully and has concluded that Watson's appeal is wholly without merit and devoid of any arguably appealable issues. We are also satisfied that Watson's counsel has made a conscientious effort to examine the record and the law and has properly determined that Watson could not raise a meritorious claim in this appeal.

---

[14] *See* App. to Opening Br. at 156 (Trial Counsel: "And during that conversation [on May 27] you eventually turn your body cam off. Do you remember that, in the elevator?").

[15] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).

9

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior

Court be AFFIRMED.  Counsel's motion to withdraw is moot.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice